**Evelyn Mary FEENERTY**

v.

**SWIFTDRILL, INC., Atwood Oceanics, International, S.A., and Swiftdrill Nigeria, Ltd.**

**Civ. A. No. B–85–1505–CA.**

United States District Court, E.D. Texas, Beaumont Division.

Feb. 16, 1989.

**520**

Douglas C. Kearney, Brice & Mankoff, Dallas, Tex., for plaintiff.

Julia M. Adams, Houston, Tex., for defendants.

## ORDER

PAUL N. BROWN, District Judge.

On consideration of the defendants' Motion to Dismiss on the basis of *forum non conveniens*, it is the opinion of this Court that the motion should be granted.

During a British Caledonian Airways flight from London, England, to Lagos, Nigeria, in November 1982, David Barty, a resident of Scotland, allegedly assaulted and injured the plaintiff, Evelyn Mary Feenerty. Feenerty, a resident of England, was a British Caledonian Airways flight attendant. Barty was a passenger aboard the aircraft, on his way to Nigeria to begin a 28–day tour of duty as a crane operator aboard the drilling rig RICHMOND. Barty had been interviewed and hired to work aboard the RICHMOND by Richard Morgan, an agent at defendant Atwood Oceanics International, S.A.'s office in Great Yarmouth, England. Atwood, S.A. was under contract to provide labor to defendant Swiftdrill Nigeria, Ltd., which was, in turn, under contract to defendant Swiftdrill, Inc. to operate the RICHMOND off the coast of Nigeria.

After Feenerty settled a claim for her injuries with Atwood Oceanics, Inc., the parent company of all the defendants, she filed suit in this Court against Atwood, Inc. and the other defendants. Atwood, Inc. was later dismissed, and the other defendants moved to dismiss the action on various grounds including the doctrine of *forum non conveniens*.

*Legal Standard*

■ In deciding this motion, this Court must determine whether there is another forum that is both available and adequate to entertain this case. *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1165 (5th Cir.1987) (petition for certiorari filed). If such a forum is both available and adequate, this Court must then consider whether the litigants' private interests and the public's interests weigh in favor of dismissal. *Id.* Even if the litigants' private interests do not favor dismissal, this Court has the discretion to dismiss the case if the public's interests weigh in favor of doing so. *Id.* The private interests to be considered are:

the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; probability of view of premises, if view would be appropriate to the action; and all other practical [considerations] that make trial of a case easy, expeditious and inexpensive [, and] there may also be questions as to the enforceability of a judgment if one is obtained.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). The public interest factors include:

the administrative difficulties flowing from court congestion; the local interest in having localized controversies resolved

at home; the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Gilbert,* 330 U.S. at 508–09, 67 S.Ct. at 843–44; *In re Air Crash Disaster,* 821 F.2d at 1162–63.

After applying this analysis, the Court concludes that an alternative forum for this action is both available and adequate, and all the private and public interest factors overwhelmingly weigh in favor of dismissal of this case.

*Adequacy and Availability of the Alternative Forum.*

■■■ An alternative forum is "available" for purposes of this analysis when the entire case and all parties can come within the jurisdiction of the forum. *In re Air Crash Disaster,* 821 F.2d at 1165. The alternative forum is "adequate" if the parties will not be deprived of all of their remedies or treated unfairly, even though they may not enjoy the same benefits as they might have enjoyed in a court in the United States. *Id.*

■■■ The defendants in this case have all agreed to submit to the jurisdiction of the courts of the United Kingdom and to waive any defense of limitations otherwise available. The defendants' submission to the jurisdiction of the alternative forum renders that forum "available" for purposes of this analysis. *Syndicate 420 at Lloyd's London v. Early American Insurance Co.,* 796 F.2d 821, 830 (5th Cir.1986). Also, there is no indication that the courts of the United Kingdom would treat the parties unfairly or deprive them of all of their remedies. Accordingly, this Court finds that the alternative forum is adequate.

*Consideration of the Litigants' Private Interests*

■■■ In evaluating the private interests of the litigants, this Court must take into consideration the plaintiff's choice of forum. In this case, however, the plaintiff's choice of forum is accorded little or no weight since she is a citizen of the United Kingdom and not a citizen of the United States. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255–56, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981).

Feenerty's allegations against the defendants concern the negligent hiring and supervision of Barty. Barty is a resident of Scotland. Richard Morgan, Atwood, S.A.'s agent who allegedly negligently hired Barty, is a resident of England. Barty was hired at Atwood, S.A.'s office in England. Pat McClusky, Barty's supervisor who was traveling with him aboard the British Caledonian Airways flight, is also a resident of the United Kingdom. Additionally, Feenerty is a resident of England and the physicians who treated Feenerty's injuries reside in the United Kingdom. It would require considerable expense to bring these witnesses, all of whom are beyond the compulsory process of this Court, to the Eastern District of Texas for trial of this matter. Therefore, it is clear that considerations of the availability of witnesses and access to sources of proof weigh strongly in favor of resolving this dispute in the courts of the United Kingdom.

To surmount the monetary and logistical difficulties presented by the foreign location of all these witnesses, Feenerty suggests the use of video depositions where possible, and where needed, the arrangement of free transportation for witnesses through her employer, British Caledonian Airways. Feenerty's suggestions fail to offer a truly practical solution to the problems posed by the otherwise needless expense and delay involved in conducting a transatlantic lawsuit.[1]

Feenerty also argues that the majority of fact witnesses reside here in the United States. In responding to the defendants' interrogatories in October 1986, Feenerty

---

**1.** In responding to interrogatories propounded to her by the defendants, Feenerty herself recognized the difficulties and delays in responding to motions and discovery requests occasioned by her foreign residency.

listed the names of ten persons having knowledge of facts relevant to the case. Eight of these ten are residents of the United Kingdom. The residency of the other two was listed as "unknown". In April of 1987, however, Feenerty submitted to the Court a different list of some twenty-six potential fact witnesses.[2] Twelve of those on the new list are Texas residents. Another nine are listed as residents of the United Kingdom. Curiously, only Barty's name appears on both lists. Absent from the second list, without explanation, are both Morgan and McClusky, the two individuals most directly related to the hiring and supervision of Barty. Yet seven of the "Texas" witnesses on the second list are crew members of the RICHMOND, and another five are officers of the defendant corporations. Feenerty offered no explanation for the discrepancies between the two lists, nor did she explain the sudden appearance of so many "Texas" fact witnesses. There is no indication of the nature, or relevance, of the testimony these witnesses might provide. Under these circumstances, this Court can not accept Feenerty's assertion that most of the potential fact witnesses reside in Texas.

Accordingly, the Court finds that the private interests of the litigants weigh in favor of dismissing this case for a trial in the courts of the United Kingdom.

### Public's Interest

The controversy at the center of this case is certainly not a localized dispute, and this Court would be hard pressed to find that there is any local interest in having this matter resolved in the Eastern District of Texas. In the absence of any local impact or interest concerning this case, there is simply no reason to burden the docket and the citizens of this District with a jury trial of this case.

It is also of considerable significance that should this Court fail to dismiss this case for a trial in the courts of the United Kingdom, the Court would be faced with applying the law of another forum. In this regard, Feenerty has strenuously argued that the American common law of admiralty will govern the issues to be resolved in this case. The Court does not concur with Feenerty's erroneous interpretation of the law.

### Choice of Law

In determining whether the common law of admiralty applies in this case, the Court must decide whether the actions of which Feenerty complains have a maritime locality and maritime nexus. *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972). Feenerty argues that the first part of the test, maritime locality, is satisfied because Feenerty was assaulted aboard an aircraft flying over international waters. Feenerty's own pleadings reveal the specious character of this argument. Feenerty's Amended Complaint alleges "upon information and belief" that at the time Feenerty was assaulted the plane was flying over international waters. Yet the air route from London, England to Abidjan, Ivory Coast, the plane's first stop on its way to Nigeria, carried the plane over Spain and North Africa. Therefore, it is at least as likely, if not more likely, that the plane was flying over land when the assault occurred.[3] In any case, the Court doubts that "maritime locality" can be defined to include that portion of an international air route which extends over international waters. Even assuming that it could be so defined, Feenerty has offered no proof that the assault occurred over international waters. On this basis alone, the maritime locality requirement is not met.

Furthermore, the relevant tort in this case is not the assault per se. The tort of

---

**2.** This new list came attached to one of Feenerty's briefs in opposition to the defendants' motion to dismiss on the basis of *forum non conveniens*.

**3.** Feenerty had listed some of the other members of her flight crew, including the pilot, Captain DiSalis, on her original witness list. Unfortunately, these persons failed to make Feenerty's second list. Among those originally listed, Captain DiSalis is presumably the only witness who is likely to have personal knowledge of the aircraft's location at the time the assault occurred.

which Feenerty complains is the allegedly negligent hiring and supervision of Barty. The negligent hiring occurred in England on dry land, whereas the negligent supervision was a continuing tort, beginning shortly before or after the plane's departure from London and continuing until the time of the assault. Whether the tort in question is assumed to be the assault, or the negligent hiring and supervision, all three lack the requisite maritime locality.

Assuming, for the sake of argument, that the assault occurred over international waters, and further assuming that this is the relevant tort for purposes of this analysis, it remains wholly implausible to argue that this tort bears a significant relationship to traditional maritime activity—the nexus requirement under *Executive Jet.* Feenerty argues that the nexus requirement is satisfied because the aircraft in question was carrying passengers over the seas, a traditional maritime activity. Yet what little force this argument has hangs only upon the thread of the assumption that the relevant tort is the assault that occurred aboard the aircraft. As demonstrated by Feenerty's own Amended Complaint, this is not the tort for which she seeks recovery. The tort of which she complains is the negligent hiring and supervision of Barty, acts that have absolutely nothing to do with traditional maritime activity. That this is the case is clearly demonstrated by the analysis this Court must apply in determining whether a tort has a significant relationship to traditional maritime activity.

There are at least four factors that this Court must examine:

(1) the functions and roles of the parties;

(2) the types of vehicles and instrumentalities involved;

(3) the causation and type of injury;

(4) the traditional concepts of the role of admiralty law.

*Sohyde Drilling & Marine Co. v. Coastal States Gas Producing Co.,* 644 F.2d 1132, 1136 (5th Cir.1981), *cert. denied,* 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981); *Kelly v. Smith,* 485 F.2d 520, 525–26 (5th Cir.1973), *cert. denied,* 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974). Even a cursory examination of these factors reveals that they have no application to the facts of this case, whether the relevant tort is the assault or the negligent hiring and supervision. Feenerty's claims simply do not implicate the "traditional concepts of the role of admiralty law", the one factor upon which this Court must place "particular emphasis". *Woessner v. Johns–Manville Sales Corp.,* 757 F.2d 634, 643 (5th Cir.1985). "The overriding concern of the maritime law is the federal interest in the need for a uniform development of the law governing the maritime industries." *Id.* at 648. It is beyond dispute that the common law of admiralty does not apply to this case.

The fact that American admiralty law does not apply demonstrates by process of elimination that foreign law must apply. Since this Court is bound to apply the conflicts of law doctrines of the forum state, Texas, one has only to look to the United Kingdom to determine which forum has the most significant relationship to the substantive issues to be resolved in this case. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex.1984).

The only relationship this case has to the United States is that one of the defendants, Swiftdrill, Inc. has its corporate headquarters in Houston, Texas. All other factors point across the Atlantic to the United Kingdom. That one of the defendants is a United States corporation does not tip the balance in favor of applying American law. *James v. Gulf International Marine,* 777 F.2d 193, 194 (5th Cir. 1985). The plaintiff in this case is a resident of the United Kingdom. The alleged negligent hiring occurred in the United Kingdom. The alleged negligent supervision began in the United Kingdom and continued aboard an aircraft that was owned and operated by a British air carrier and registered in the United Kingdom. Most, if not all, of the material fact witnesses are residents of the United Kingdom. After applying *Duncan's* significant relationship

test, it is abundantly clear that the law of the United Kingdom applies to this case.[4]

Accordingly, the Court finds that all the considerations of the public's interest weigh in favor of dismissing this action on the basis of *forum non conveniens.*

*Summary*

■ After reviewing all of the relevant factors—the availability and adequacy of an alternative forum, the private interests of the litigants, and the public's interest in the fair and convenient administration of justice—this Court concludes that this action should be dismissed and the plaintiff should be allowed to proceed in the courts of the United Kingdom.

*Conditions of Dismissal*

The Court will impose the following conditions upon the parties. The plaintiff shall refile her case in a court of competent jurisdiction in the United Kingdom within ninety (90) days of the date of this Order. Upon filing her case within the time prescribed, the defendants shall agree to accept service of the proper writs and to submit to the jurisdiction of the courts of the United Kingdom. Furthermore, the defendants shall waive any defense of limitations and shall agree to satisfy any final judgment rendered by a court of competent jurisdiction in the United Kingdom. *See Bailey v. Dolphin International, Inc.,* 697 F.2d 1268, 1280 (5th Cir.1983). Finally, within ninety (90) days of the date of this Order, the plaintiff and defendants shall jointly notify this Court that all of the above conditions have been satisfied, and at such time this Court will enter a final judgment, dismissing this action with prejudice. Accordingly, it is

ORDERED that the defendants' Motion to Dismiss this case on the grounds *forum non conveniens* is GRANTED. It is further

ORDERED that within ninety (90) days from the date of this Order the plaintiff and defendants shall jointly notify this Court of their compliance with the conditions contained in this Order.

---

**4.** One final issue must be discussed with regard to the choice of law. The parties have spent much time arguing back and forth over whether English law would allow the plaintiff to discontinue the action she filed in the United Kingdom and pursue her cause of action in Texas. The particular aspect of English procedural law raised by this dispute is, perhaps, very interesting, but it is also quite irrelevant to this Court's *forum non conveniens* analysis. That the courts of the United Kingdom would allow Feenerty to discontinue an action in that forum, in order to pursue another action in Texas does not compel this Court to forsake its duty under American law to determine the location of the most convenient forum for this action. That the courts of the United Kingdom would decline to exercise their own jurisdiction in order to allow Feenerty to proceed in Texas proves nothing more than the fact that those courts recognize that they have jurisdiction over Feenerty's claim in the first instance.