38 F.3d 1152
 FLIGHT CONCEPTS LIMITED PARTNERSHIP, Russell P. O'Quinn,
Gilman A. Hill, and The Skyfox Corporation,
Plaintiffs-Appellants,
v.
The BOEING COMPANY and Boeing Military Airplane Company, A
Division, Defendants-Appellees.
 No. 93-3158.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 1, 1994.
 
 1
 Robert Martin (Paul B. Swartz with him, on the brief) of Martin, Pringle, Oliver, Wallace & Swartz, Wichita, KS, for plaintiffs-appellants.
 
 
 2
 Gerald Sawatzky (J. Steven Massoni with him, on the brief) of Foulston & Siefkin, Wichita, KS, for defendants-appellees.
 
 
 3
 Before EBEL and SETH, Circuit Judges, and MECHEM,* Senior United States District Judge.
 
 
 4
 MECHEM, Senior United States District Judge.
 
 
 5
 This diversity case presents questions of contract interpretation under Kansas law. Plaintiffs appeal the district court's grant of summary judgement to defendants on all counts.
 
 BACKGROUND
 
 6
 A detailed account of the business dealings which give rise to this dispute is provided by the district court in Flight Concepts Ltd. Partnership v. Boeing Co., 819 F.Supp. 1535 (D.Kan.1993), and we will not repeat that here. Briefly, the plaintiffs (hereinafter "the Skyfox group") modified the Lockheed T-33 aircraft to produce a plane, the Skyfox, envisioned as a low-cost, multiple-role aircraft which would meet the military needs of developing countries as well as the United States. Plaintiffs explored potential marketing options, and eventually gave Boeing Military Airplane Company (hereinafter "BMAC") the exclusive right to produce and sell the airplane worldwide. Under the agreement, plaintiffs would receive a royalty of $150,000 for every Skyfox sold. BMAC never produced or sold any aircraft, and terminated the agreement after two years. Plaintiffs brought suit alleging fraud in the inducement, misrepresentation and concealment; breach of the covenant of good faith and fair dealing; and breach of fiduciary duty. Although plaintiffs challenge the validity of the contract, they request damages calculated as their projected royalty earnings from the sale of 450 Skyfox. Plaintiffs also ask the return of various materials and equipment retained by BMAC after the contract terminated. The district court, after a careful analysis of the evidence and the law, granted summary judgment to defendants on all counts, from which plaintiffs appeal. Plaintiffs repeat their claims of fraud, breach of implied duty and breach of fiduciary duty, and assert the district court erred in finding no disputed material facts on those issues. We affirm.
 
 
 7
 After meeting several times the parties entered into a series of agreements. In a Memorandum of Understanding, signed April 2, 1985, the parties agreed to enter into an exclusive teaming arrangement to develop a marketing strategy for the Skyfox. Apl.App.Vol. 3 at 544-46. The memorandum specifically denied the project, to be pursued in phases, was a partnership. The Memorandum terminated by its own terms on July 1, 1985, and on that date the parties entered into another agreement to continue the feasibility study. The parties negotiated a Proprietary Data Exchange Agreement, effective November 1, 1985, to protect the confidentiality of their technical data. That agreement denied the existence of "a joint venture, partnership or other formal business organization" between the parties. Apl.Supp.App.Vol. IV at 1211. The parties negotiated a Patent and Know-How License Agreement (hereinafter "License Agreement"), entered into on November 27, 1985. The License Agreement gave Boeing "an exclusive, worldwide right and license to utilize Licensor's Know-How and the inventions of Licensed Patents in the manufacture, use and sale of licensed product(s) and any and all other substantial rights." Apl.App.Vol. 3 at 525. In addition to the royalty for every Skyfox sold, BMAC contracted to pay all taxes and fees associated with any patent application. Apl.App.Vol. 3 at 533.
 
 
 8
 The terms of the Licensing Agreement are central to this dispute. Under Article X, BMAC reserved "the right to terminate this Agreement by giving Licensor sixty (60) days notice in writing of such termination, and upon expiration of said sixty (60) days this Agreement shall automatically be terminated." Apl.App.Vol. 3 at 535. The agreement could also be terminated by mutual written consent of the parties. Id. Article XIII relieves BMAC from any obligation to produce or sell the Skyfox.
 
 Article XIII. NO OBLIGATION TO PRODUCE
 
 9
 It is the intent of the parties hereto, in consideration of the terms and conditions herein, that BMAC shall be under no obligation whatsoever to produce and/or sell Licensed Product(s) and/or any product utilizing Licensor's Know-How during any part of the term of this License Agreement, and the License Agreement shall not be terminated by Licensor for BMAC's failure to produce and/or sell Licensed Products and/or any product utilizing Licensor's Know-How.
 
 
 10
 Apl.App.Vol. 3 at 536. The final subparagraph of the Agreement, under Article XIV, General Provisions, states:
 
 
 11
 This Agreement embodies the entire understanding between the parties as to a Patent and Know-How License and there are no prior representations, warranties or agreement between the parties relating hereto except for other agreements in writing entered into or which may be entered into between BMAC and Licensor and this Agreement is executed and delivered upon the basis of this understanding. No alteration, waiver or change in any of the terms hereof subsequent to the execution hereof claimed to have been made by any representative of either party shall have any force or effect unless in writing signed by the parties hereto or their duly authorized agents or representatives.
 
 
 12
 Apl.App.Vol. 3 at 538.
 
 
 13
 The Skyfox group charges first that BMAC fraudulently induced them to form the contract by promising to invest $25 to $60 million in the Skyfox program when BMAC never intended to spend its own money converting the aircraft. Plaintiffs also allege that BMAC misrepresented its commitment to the project by failing to inform the Skyfox Group that it had plans to develop Project Vision, a plane projected to have similar uses, and that it had access to classified information on government procurement plans. The claims for breach of implied covenant of good faith and fair dealing and breach of fiduciary duty arise from the same facts.
 
 
 14
 This court reviews the district court's grant of summary judgment de novo using the same legal standard employed by the lower court. Thrasher v. B & B Chemical Co., Inc., 2 F.3d 995, 996 (10th Cir.1993). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1414 (10th Cir.1993). Disputed material facts must be viewed in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party must demonstrate the absence of any material factual issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the non-moving party must bring forth specific facts showing there is a genuine issue for trial as to the essential elements of the non-moving party's claim. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); Nannie, 3 F.3d at 1414. The non-moving party may not rely on mere allegations in the pleadings to overcome the summary judgment motion. Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324, 106 S.Ct. at 2553.
 
 DISCUSSION
 
 15
 This court applies the substantive law of the forum state when sitting in diversity. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941); Equifax Services, Inc. v. Hitz, 905 F.2d 1355 (10th Cir.1990). Therefore we apply Kansas law to the facts of this case.
 
 
 16
 The plaintiffs argue that we should look to defendants' oral promises in determining the terms of the Licensing Agreement which, they contend, is ambiguous. Plaintiffs consider the Licensing Agreement in its entirety as expressing a general purpose and obligation to produce and manufacture Skyfox which is internally contradicted by Article XIII's disavowal of any obligation to produce and sell. Ambiguity exists where contract language lends itself to more than one reasonable interpretation. Albers v. Nelson, 248 Kan. 575, 578, 809 P.2d 1194, 1197 (1991). Whether a contract's provisions are ambiguous is a matter of law to be determined by the court. Mobile Acres, Inc. v. Kurata, 211 Kan. 833, 839, 508 P.2d 889, 895 (1973). We agree with the district court's conclusion that the Licensing Agreement is not ambiguous as a matter of law. In reading through the articles we do not find any which give rise to more than one interpretation. The unambiguous language of the contract controls the rights and responsibilities of the parties in this case. Bank IV Salina, N.A. v. Aetna Cas. & Sur. Co., 810 F.Supp. 1196, 1204 (D.Kan.1992).
 
 
 17
 A. Fraud in the Inducement, Fraudulent Misrepresentation
 
 
 18
 Plaintiffs urge this court to look beyond the contract at the verbal assurances defendants gave during negotiations, that BMAC was committed to Skyfox and would support the project financially, to determine that defendants fraudulently induced plaintiffs to sign the Licensing Agreement. Plaintiffs allege defendants' verbal assurances misrepresented the truth in that defendants never intended to invest money in or develop the project.
 
 
 19
 Under Kansas law, parties to a contract may define the terms of their agreement and, absent fraud, mistake or duress, the contract is enforceable. Augusta Medical Complex, Inc. v. Blue Cross of Kansas, Inc., 227 Kan. 469, 474-76, 608 P.2d 890, 895 (1980). Where the parties have negotiated and entered into a written contract which addresses the issues negotiated between them, the written contract determines their rights. Albers, 248 Kan. at 578, 809 P.2d 1194; Edwards v. Phillips Petroleum Co., 187 Kan. 656, 659, 360 P.2d 23, 26 (1961). Parol evidence is inadmissible to introduce statements or representations made during the negotiations that conflict with the written agreement, absent fraudulent misrepresentation. Edwards, 187 Kan. at 659, 360 P.2d 23. To be actionable, a misrepresentation must relate to a pre-existing or present fact; statements or promises about future occurrences are not actionable. Id. An exception exists where evidence establishes that, at the time the promise as to future events was made, the promisor did not intend to perform the promised action. Id. at 660, 360 P.2d 23. Where the written contract directly contradicts the oral promises made during contract negotiations, the oral promise cannot be construed as fraudulent. Id.; Jack Richards Aircraft Sales, Inc. v. Vaughn, 203 Kan. 967, 973, 457 P.2d 691, 696 (1969). The Licensing Agreement released BMAC from any obligation to produce aircraft. The fact that the written contract conflicts directly with any oral promises BMAC employees made concurrently erases any effect of those oral promises from the Agreement. Those concurrent oral promises cannot, as a matter of law, establish fraudulent inducement or misrepresentation.
 
 
 20
 Plaintiff Russell P. O'Quinn, the originator of the Skyfox concept, alleges he had no opportunity to read the Licensing Agreement before he signed it and he would not have signed had he known the Agreement included Article XIII. He argues defendants misrepresented the Agreement to him when they assured him it contained nothing that would hurt him. The plaintiffs were represented throughout the negotiations by able counsel and are themselves experienced and astute businessmen. It was Mr. O'Quinn's duty to read and understand the provisions of the Licensing Agreement. A party cannot void a contract by claiming to be ignorant of its contents. Albers, 248 Kan. at 578, 809 P.2d 1194. Viewing any disputed facts in the light most favorable to plaintiffs, we can find no legal basis for plaintiffs' claims of fraudulent inducement and misrepresentation.
 
 B. Duty of Good Faith and Fair Dealing
 
 21
 Plaintiffs correctly state that Kansas law reads an obligation to deal fairly and in good faith into almost every contract. Bank IV Salina, 810 F.Supp. at 1204. The purpose of the good faith doctrine is to "protect the reasonable expectations of the parties." Big Horn Coal Co. v. Commonwealth Edison Co., 852 F.2d 1259, 1267 (10th Cir.1988). The doctrine comes into play where a contract gives one party some discretion to implement a contract provision. Although the doctrine is generally implied for all contract provisions, it is irrelevant where the contract is drawn so as to leave a decision to the "uncontrolled discretion" of one of the parties. Id. In such a case, the parties contracted to allow one of them the unconditional right to act, and an implied promise to deal fairly has no purpose. Id. at 1268. Under the plain language of the contract BMAC has no obligation to perform, and plaintiffs have no right to terminate the contract for BMAC's nonperformance. We understand such language to allow BMAC "uncontrolled discretion" as to whether it will produce or sell Skyfox. BMAC's termination of the Licensing Agreement does not violate the parties' reasonable expectations.
 
 C. Breach of Fiduciary Duty/Joint Venture
 
 22
 Plaintiffs assert that BMAC had a duty to disclose Boeing's concurrent development of Project Vision and Boeing's illegal receipt of classified information on military procurement, and that the failure to disclose this information during contract negotiations was fraudulent. To establish fraud by concealment under Kansas law, plaintiffs must show the following elements by clear and convincing evidence: (1) that the defendants had factual information plaintiffs did not have and could not have discovered through reasonable diligence; (2) that defendants had a duty to communicate that information to plaintiffs; (3) that the defendants deliberately failed to communicate the information to plaintiffs; (4) that the plaintiffs justifiably relied on defendants to communicate the material information; and (5) that plaintiffs were injured by defendants' failure to communicate the material information. Lesser v. Neosho County Community College, 741 F.Supp. 854, 863 (D.Kan.1990). A material fact is one a reasonable person would consider important in choosing a course of action. Id. Suppression of material information is not fraudulent unless the silent party is under some legal obligation to disclose. DuShane v. Union Nat. Bank, 223 Kan. 755, 759, 576 P.2d 674, 678 (1978).
 
 
 23
 In general, the duty to communicate arises from the relationship between the parties. Id. at 760, 576 P.2d 674. The duty to disclose arises under Kansas law when there is a fiduciary relationship which may be created by contract or may arise from the relationship of the parties. Rajala v. Allied Corp., 919 F.2d 610, 614 (10th Cir.1990), cert. denied, 500 U.S. 905, 111 S.Ct. 1685, 114 L.Ed.2d 80 (1991). "A fiduciary relationship imparts a position of peculiar confidence placed by one individual in another. A fiduciary is a person with a duty to act primarily for the benefit of another." Denison State Bank v. Madeira, 230 Kan. 684, 691, 640 P.2d 1235, 1241 (1982). A fiduciary relationship may arise from the facts and circumstances of a relationship, but because the fiduciary assumes additional responsibilities within the relationship, the role cannot be established inadvertently. Rajala at 614. Under Kansas law, one must consciously assume the responsibilities of a fiduciary. Id. at 615.
 
 
 24
 The record contains no evidence that Boeing or BMAC deliberately assumed the responsibilities of fiduciary in their dealings with the Skyfox group. Nor do the facts as alleged by plaintiffs show that BMAC agreed to act for plaintiffs' benefit. We conclude that defendants were not fiduciaries and had no duty to disclose information to plaintiffs by virtue of that relationship.
 
 
 25
 Plaintiffs argue a joint venture was formed by the parties that obligated BMAC to communicate material information. A joint venture is an association between two or more people to carry out a business activity for profit. Modern Air Conditioning, Inc. v. Cinderella Homes, Inc., 226 Kan. 70, 76, 596 P.2d 816, 823 (1979).
 
 
 26
 Among the acts or conduct which are indicative of a joint venture, but no single one of which is controlling in the determination, are: (1) the joint ownership and control of property; (2) the sharing of expenses; (3) a community of control over and active participation in the management and direction of the business enterprise; (4) the intention of the parties, express or implied; and (5) the fixing of salaries by joint agreement.
 
 
 27
 Id. at 76, 596 P.2d 816. After reviewing the Licensing Agreement it is clear that the parties did not jointly own property or share expenses. BMAC exercised control over its activities and the level of its participation in the Skyfox project. There was no mutual responsibility for the fixing of project salaries. Accepting disputed facts in the light most favorable to plaintiffs, there is no evidence of a joint venture which would obligate BMAC to disclose material information. We find BMAC was, as a matter of law, under no obligation to disclose Project Vision or its access to secured information to the Skyfox group during their negotiations.
 
 
 28
 Finally, plaintiffs accuse BMAC of having retained data, spare parts and unspecified materials which should be returned to the Skyfox group. The spare parts consist of test wings, a mock cockpit, and a fuselage. Plaintiffs concede that BMAC initially paid for some of the materials but assert, without citing any evidence or authority, that these matters should be resolved at trial. Having found no fiduciary relationship or joint venture between the parties, we must rely on contract language to determine this question.
 
 
 29
 The Licensing Agreement grants to BMAC any "inventions made by BMAC or jointly by BMAC and Licensor or by Licensor when funded by BMAC or patents and know-how resulting from BMAC's and Licensor's or BMAC funded research and/or development work relating to the Licensed Product(s)...." Apl.App.Vol. 3 at 526. Under the Proprietary Data Exchange Agreement, proprietary data belongs to the originator. We find no support for plaintiffs' position in any of the agreements before us and agree with the district court's conclusion that the materials were rightly retained by BMAC.
 
 CONCLUSION
 
 30
 Accepting plaintiffs' version of disputed facts, defendants' behavior through the course of this business relationship does not rise to the level of fraud. Nor can defendants be said to have breached a duty to deal fairly for negotiating a contract with terms favorable to themselves. We AFFIRM the district court's grant of summary judgment to defendants on all claims.
 
 
 
 *
 The Honorable Edwin L. Mechem, Senior United States District Judge for the District of New Mexico, sitting by designation