**PULSECARD, INC., Plaintiff,**

**v.**

**DISCOVER CARD SERVICES, INC., et al., Defendants.**

**Civil Action No. 94–2304–EEO.**

United States District Court, D. Kansas.

Feb. 27, 1996.

Frederick K. Starrett, Denise E. Farris, Lathrop & Norquist, Overland Park, KS, for PulseCard, Inc.

Marc E. Elkins, Reggie C. Giffin, Morrison & Hecker, Kansas City, MO, Randall E.

Hendricks, Lawrence A. Rouse, Melissa C. Hinton, Rouse, Hendricks, German, May & Shank, Kansas City, MO, Michael W. Lerner, The Law Office of Mick Lerner, P.A., Overland Park, KS, for Discover Card Services, Inc.

Marc E. Elkins, Reggie C. Giffin, Morrison & Hecker, Kansas City, MO, Randall E. Hendricks, Melissa C. Hinton, Rouse, Hendricks, German, May & Shank, Kansas City, MO, Michael W. Lerner, The Law Office of Mick Lerner, P.A., Overland Park, KS, for SPS Payment Systems, Inc.

Scuyler M.P. Kurlbaum, Steven H. Mustoe, Kurlbaum, Stoll, Seaman, Reefer Suter & Mustoe, P.C., Kansas City, MO, for United Surgical Funding and Systems, Inc., Medcash, Inc.

Marc E. Elkins, Reggie C. Giffin, Morrison & Hecker, Kansas City, MO, for SPS Payment Systems, Inc.

Frederick K. Starrett, William G. Howard, Denise E. Farris, Lathrop & Norquist, Overland Park, KS, Curtis L. Tideman, Lathrop & Norquist, Kansas City, MO, for PulseCard, Inc.

### *MEMORANDUM AND ORDER*

EARL E. O'CONNOR, Senior District Judge.

This matter is before the court on defendant Discover Card Services, Inc.'s Motion for Partial Summary Judgment on Counts II, III, and IV of the Second Amended Complaint (Doc. # 225). For the reasons stated below, Discover Card Services, Inc.'s motion for summary judgment is granted as to Count II and Count III. Because PulseCard has since withdrawn its claim for defamation under Count IV, Discover Card Services, Inc.'s motion for summary judgment as to Count IV is denied as moot.

The court, after examining the briefs and the exhibits, finds that all facts and legal issues have been adequately set forth by the parties, and thus, oral arguments would not materially assist the court in its resolution of the pending motion for summary judgment. Consequently, plaintiff's request for oral ar-

gument pursuant to District of Kansas Rule 7.2 is denied.

## A. *Factual Background*

The material uncontroverted facts established by the parties in accordance with District of Kansas Rule 56.1[1] are as follows:

On or about August 30, 1991, Discover Card executed two written contracts with PulseCard, identified as: Discover Card Merchant Services Agreement, Manual Processing, and Discover Card Merchant Services Agreement, Electronic Processing (hereinafter "Merchant Agreements"). The Merchant Agreements contain no language regarding the creation of a partnership or joint venture relationship between Discover Card and PulseCard.

Dr. Robin F. Potter is the chairman and president of Pulsecard. When asked in deposition whether any individual at Discover Card had ever used the words "partnership" or "joint venture" to describe the relationship between Discover Card and Pulsecard, Potter replied, "That I can remember specifically, no." Potter also stated that no one at Discover Card had ever described the relationship between Discover Card and Pulse-Card as a fiduciary relationship.

Discover Card served an interrogatory on PulseCard, requesting that PulseCard "[i]dentify all PulseCard's merchants who terminated any agreement with PulseCard due to the alleged conduct of Discover Card as stated in Counts III or IV of the First Amended Complaint." In response, Pulse-Card listed 101 merchants consisting of various dentists and medical associations.

Jackie Pruitt is the national account manager for PulseCard. In her deposition, she was asked who at PulseCard would be the best person to ask about the reason why the 101 merchants left PulseCard. Pruitt replied, "I don't know that there is a good person. I don't think when people leave, I don't think we know why." Pruitt further testified that the reasons why merchants have left PulseCard could be determined through investigation.

Charlene Osborn is the operations manager for PulseCard. Her duties include handling customer service, contracts processing and review. In her deposition, she testified that there is no place on PulseCard's computers to record the reason a merchant decided to terminate his or her PulseCard program. Osborn further testified that the only record PulseCard would have of the reason a merchant terminated the PulseCard program would be if the merchant sent a letter stating his or her reason for termination or if Pulse-Card noted on the contract the reason for termination. Otherwise, the only way to determine the reason for termination would be to contact the merchant. Osborn is not aware of any person at PulseCard who contacted the individuals contained in the list of 101 merchants to determine the reasons those individuals cancelled their PulseCard agreements.

At the request of Denise Farris, one of PulseCard's attorneys, Osborn generated a report that listed the merchants who had terminated the PulseCard program. However, this list included all individuals who had terminated their PulseCard program, not just those individuals who terminated due to alleged actions by Discover Card.

Through interrogatory question # 7 of Discover Card's first set of interrogatories, Discover Card requested that PulseCard:

Identify all dentists or other health care providers that terminated their agreement with PulseCard as a result of any action by Discover Card; and

   a. State the date the health care provider contracted with PulseCard and the date the provider terminated its contract with PulseCard; and

   b. Quantify all monies received by PulseCard from that provider on an annual basis and state the total Discover Card transaction volume of that provider for each month of PulseCard's

---

**1.** Pursuant to Local Rule 56.1, all material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.

relationship with that health care provider.

In response, PulseCard stated "[r]efer to PulseCard's response to Interrogatory No. 3 above, incorporated by reference herein. To the extent Interrogatory # 7 seeks additional information, PulseCard objects as vague, ambiguous, overly broad and unduly burdensome."

Interrogatory question # 8 of Discover Card's first set of interrogatories requested that PulseCard provide the following information: "For each dentist or other health care provider who terminated their relationship with PulseCard due to any acts by Discover Card, state and describe what actions of Discover Card led to the termination, the dates and location of those acts and the identity of the people involved." In response, PulseCard stated as follows:

> PulseCard objects to Interrogatory 8 as overly broad and unduly burdensome. Without waiving this objection, Discover Card sales representatives, in addition to those allegations raised in PulseCard's Second Amended Complaint, engaged in a pattern of conduct wherein PulseCard merchants were called upon by Discover Card representatives who were encouraged to defame and disparage PulseCard; representatives routinely called Pulse-Card's executives "liars"; Discover Card represented PulseCard to be a "less than clean" or "disreputable" operation; merchants were told PulseCard would not be in business for long; and PulseCard merchants were given discount rates substantially lower than the Discover Card rate known to be offered by PulseCard. Discover Card refused to honor its procedures for signing up merchants through Pulse-Card. Discover Card also breached its basis point agreement with PulseCard, and has maligned PulseCard's proprietary terminal.

Potter was asked in his deposition if he had any records to support the allegations contained in paragraph 63 of his original complaint that Discover Card agents had called on existing or pending PulseCard merchants and engaged in tortious acts. Dr. Potter responded that "I have personal phone calls and conversations with doctors, yes. No written records that I know of." When asked to identify a doctor or other health care provider that terminated his or her agreement with PulseCard due to an action by a Discover Card representative, Potter responded that there was "a doctor last month who did it." That doctor was the only specific doctor that Potter could identify. Potter was not aware of the doctor's name. The only reason given by the doctor for terminating his account was because "Discover Card came in and said we'll give you a better deal."

## B. *Discussion*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hicks v. Watonga*, 942 F.2d 737, 743 (10th Cir.1991). Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512. An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. This inquiry necessarily implicates the substantive evidentiary standard of proof that would apply at trial. *Id.* at 252, 106 S.Ct. at 2512.

Once the moving party meets its burden, the burden shifts to the nonmoving party to

demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1988). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D.Kan. Rule 56.1.

*Count II: Breach of Fiduciary Duty Claim*

Discover Card urges the court to grant summary judgment on Count II of the pretrial order, on the ground that no fiduciary relationship existed between the parties; thus, because Discover Card did not owe a fiduciary duty to PulseCard, Discover Card did not breach any such duty.

■ In general, Kansas law recognizes two types of fiduciary relationships: (1) those specifically created by contract, such as principal/agent, attorney/client, and trustee cestui que trust, and those created by formal legal proceedings, such as guardian and/or conservator/ward, and executor/administrator of an estate, and (2) those implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions. *Rajala v. Allied Corporation*, 919 F.2d 610, 614 (10th Cir.1990), *cert. denied*, 500 U.S. 905, 111 S.Ct. 1685, 114 L.Ed.2d 80 (1991) (citing *Denison State Bank v. Madeira*, 230 Kan. 684, 691, 640 P.2d 1235, 1241 (1982)). PulseCard maintains that a fiduciary relationship was created under both categories.

With respect to the first category, PulseCard appears to argue that a fiduciary relationship was created through an agency relationship. PulseCard maintains that Larry Myatt, SPS Vice–President of Marketing, acted as a representative of Discover Card in negotiations with PulseCard, that Myatt's actions created some sort of agency relationship to Discover Card, and that the agency relationship created a fiduciary duty between Discover Card and PulseCard.

■ Under Kansas law, a party seeking to establish the existence of a fiduciary relationship must prove it by clear and convincing evidence. *Rajala*, 919 F.2d at 615. "For the plainest of reasons, agreements establishing fiduciary relationships, if not in writing, must be clear and convincing. . . . A confidential relationship is never presumed, and the burden of proof is on the party asserting it." *Id.* (citing *Wolf v. Brungardt*, 215 Kan. 272, 284–85, 524 P.2d 726, 736 (1974) (quoting *Paul v. North*, 191 Kan. 163, 170, 380 P.2d 421, 426 (1963))). Moreover, fiduciary obligations should be extended reluctantly to commercial or business transactions. *Pizza Management, Inc. v. Pizza Hut, Inc.*, 737 F.Supp. 1154, 1183 (D.Kan.1990).

■ Determination of what constitutes agency and whether there is any competent evidence reasonably tending to prove existence of agency is a question of law. *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 446, 827 P.2d 24, 31 (1992). PulseCard devotes one paragraph of its response brief to articulating the facts that it believes demonstrate the existence of an agency relationship through Myatt. That paragraph, in pertinent part, states as follows:

Mr. Myatt, SPS' Vice President, informed PulseCard representatives that he could make an agreement on behalf of Discover Card. In fact, it was Mr. Myatt who requested that Discover Card be included in the AGD [Association of General Dentistry] program. During discussions, Mr. Myatt spoke on behalf of Discover Card and authorized PulseCard to quote Discover Card rates for the AGD program. Furthermore, Mr. Myatt represented Discover Card in a meeting with Dr. Potter and Harold Donnell, Jr., Executive Director for AGD on June 12, 1991. The commitments which Larry Myatt made on behalf of Discover Card were subsequently confirmed by Terry Boren, Assistant Vice President for Discover Card, and Hunt Barrett, Discover Card's Senior Account Representative for PulseCard. Clearly, based on those facts, Mr. Myatt had authority to bind Discover Card.

PulseCard's Memorandum in Response to Discover Card's Motion for Summary Judgment, p. 55.

Discover Card counters this argument by noting that PulseCard has misconstrued certain deposition testimony in an attempt to create a factual basis for its theory that Myatt was representing Discover Card. Discover Card contends that Potter, in his deposition, testified that he *did not* think Myatt was purporting to represent Discover Card. The court has carefully examined the record, and concludes that the evidence therein bears out Discover Card's contentions. The deposition of Potter contains the following colloquy between Discover Card's attorney and Potter:

Q: Did he [Larry Myatt] tell you anything else purporting to represent Discover Card?

A (Potter): *I don't think he was purporting to represent Discover Card. That isn't what he said.* He said the [sic] Discover Card told him that that was okay and that they wanted to be part of the association endorsed program. So I went back to the Academy to get Discover Card included in the program.

Deposition of Potter, p. 141 (emphasis added).

Discover Card does not controvert that Myatt told Potter that Myatt could make an agreement on behalf of Discover Card. However, Discover Card contends that, to the extent PulseCard relies on this statement by Potter to support a theory that Myatt had authority to make agreements on behalf of Discover Card in all matters, the statement misconstrues the evidence.

Discover Card asserts, and the court finds, that PulseCard's remaining factual assertions regarding Myatt as an agent of Discover Card similarly misconstrue the deposition testimony. PulseCard's statement of fact that Myatt represented Discover Card in a meeting with Potter and Harold Donnell, Jr., is not supported by the record: Donnell's deposition testimony reveals that he did not have personal knowledge of whether Myatt was representing Discover Card in the meeting, and that Myatt did not say he was representing Discover Card. Rather, Donnell in is deposition stated he assumed Myatt was representing Discover Card because Discover Card and SPS (Myatt's employer) are subsidiaries of a common parent corporation.

Even if we were to find the evidence presented by PulseCard sufficient to create a question of fact as to whether Myatt had authority to bind Discover Card on certain matters, Discover Card submits that such finding is inadequate to preclude entry of summary judgment. Proof of such authority in and of itself, Discover Card contends, does not establish that a fiduciary duty was created between PulseCard and Discover Card.

We agree. The hallmark of a fiduciary relationship is a voluntary and conscious assumption or acceptance of the duties of a fiduciary. *See Denison,* 230 Kan. at 696, 640 P.2d at 1243–44 ("one may not abandon all caution and responsibility for his own protection and unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary.") Fiduciary relationships cannot be established inadvertently and cannot be forced upon another party. *Rajala,* 919 F.2d at 614–15; *Flight Concepts Ltd. Partnership v. Boeing Co.,* 38 F.3d 1152, 1158 (10th Cir.1994).

Here, the record is devoid of any evidence, much less clear and convincing evidence, showing that Myatt consciously accepted, on behalf of Discover Card, the duties of a fiduciary towards PulseCard. Nor has PulseCard presented any evidence that Myatt engaged in any actions or made any representations that would support any of the factors necessary to create a fiduciary duty set forth in *Rajala, Flight Concepts,* and *Denison.* We conclude that, based upon the facts presented, no fiduciary relationship was established between PulseCard and Discover Card via Larry Myatt as some sort of agent of Discover Card.

■ PulseCard also argues that a fiduciary relationship existed because Discover Card was an agent of PulseCard. In support of this theory, PulseCard submits the following facts:

> Under the AGD program, it was agreed that revenue gained would be split among the parties, with PulseCard's share being 28 basis points. Also, under the terms of the program, Discover Card would collect the revenue and remit PulseCard's share of the revenue directly to PulseCard. Under that procedure, Discover Card was an agent of PulseCard.

PulseCard's Memorandum in Response to Discover Card's Motion for Summary Judgment, p. 56.

PulseCard cites a single case, *Professional Lens Plan, Inc. v. Polaris Leasing Corp.,* 238 Kan. 384, 710 P.2d 1297 (1985), as authority in support of this theory. That case, however, is not persuasive. *Professional Lens* dealt specifically with the question of whether a retailer of computer equipment was an agent of a computer manufacturer for purposes of liability, and held no agency relationship was created. PulseCard cites *Professional Lens* for the definition of "agency" as being "a contract, either express or implied, by which one party confides to the other the management of some business to be transacted in his name, or on his account, and by which that other assumes to do the business and to tender an account of it." *Professional Lens,* 710 P.2d at 1303.

However, PulseCard has failed to demonstrate how the undisputed facts of the instant case establish an agency relationship between the parties. PulseCard has presented no evidence that Discover Card "confided to" PulseCard "the management of some business to be transacted in its name." The facts merely reflect that Discover Card paid a percentage of merchant sales to PulseCard where the customer used a Discover Card credit card. Once again, even if we determined that such an agency relationship were sufficiently established, the record is devoid of any evidence demonstrating that Discover Card consciously assumed the duties of a fiduciary to PulseCard. Conscious assumption of the alleged fiduciary duty is a mandatory element under Kansas law. *See Hotmar v. Lowell H. Listrom & Co., Inc.,* 808 F.2d 1384, 1387 n. 3 (10th Cir.1987) (citing *Denison State Bank v. Madeira,* 230 Kan. 684, 640 P.2d 1235 (1982)).

PulseCard next contends that a fiduciary relationship was created under the second category of fiduciary relationships, those implied in law due to the factual situation surrounding the parties. More specifically, PulseCard maintains a fiduciary relationship was created through a joint venture between the parties, because PulseCard and Discover Card agreed that they would "jointly engage in the AGD marketing program." According to PulseCard, under the terms of the AGD program, PulseCard was given authority to quote rates for Discover Card and to offer contracts for Discover Card. Under this arrangement, PulseCard argues, Discover Card relinquished to PulseCard some of its authority to make offers and accept contracts, and accordingly evidences the existence of a joint venture.

■ "A joint venture is an association between two or more people to carry out a business activity for profit." *Flight Concepts Ltd. Partnership,* 38 F.3d at 1158 (citing *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.,* 226 Kan. 70, 76, 596 P.2d 816, 823 (1979)). The following acts or conduct are indicative of a joint venture, though no single factor is determinative: (1) the joint ownership and control of property; (2) the sharing of expenses; (3) a community of control over and active participation in the

management and direction of the business enterprise; (4) the intention of the parties, express or implied; and (5) the fixing of salaries by joint agreement. *Modern Air Conditioning, Inc.*, 226 Kan. at 76, 596 P.2d at 816. The burden of proving a joint venture rests upon the party asserting its existence. *Flight Concepts*, 819 F.Supp. 1535, 1547 (D.Kan.1993).

■ Viewing the record in the light most favorable to PulseCard, PulseCard has presented no affirmative or specific facts that could lead a rational trier of fact to conclude that a joint venture existed between the parties. Specifically, PulseCard presents no evidence of joint ownership and control of property. Nor does PulseCard present any evidence that Discover Card and PulseCard ever shared any profits or losses. The Contract between the parties merely provided that PulseCard would be paid a certain percentage of merchant sales where the customer used a Discover Card. Such a plan is inconsistent with a joint venture. *See Flight Concepts*, 819 F.Supp. at 1547.

PulseCard's only evidence to demonstrate Discover Card shared expenses with Pulse-Card is the fact that Discover Card paid for a Christmas dinner for PulseCard employees. PulseCard cites no authority suggesting that taking the employees of a company with whom an entity has a contractual relationship to dinner creates a joint venture; moreover, the fulfillment of one factor alone does not demonstrate that a joint venture was created. The record contains no evidence establishing community of control over the management and direction of any business enterprise. Nor is there any evidence that PulseCard and Discover Card fixed any salaries by joint agreement. In sum, Pulse-Card has not presented any clear and convincing evidence to controvert Discover Card's assertion that no joint venture was in fact ever created.

■ In *Rajala v. Allied Corporation*, the Tenth Circuit specifically detailed the factors courts should consider in determining whether the second type of fiduciary relationship exists:

"[The Supreme Court of Kansas] has refused ... to give an exact definition to fiduciary relations." [*Denison*, 230 Kan. at 691, 640 P.2d at 1241] (quoting *Curtis v. Freden*, 224 Kan. 646, 651, 585 P.2d 993, 998 (1978)).
Although such fiduciary relationships cannot be defined with precision, the Supreme Court of Kansas has prescribed "certain broad principles which should be considered in making the determination of whether a fiduciary relationship exists in any particular factual situation:

A fiduciary relationship imparts a position of *peculiar confidence placed by one individual in another.* A fiduciary is a person with a duty to *act primarily for the benefit of another.* A fiduciary is in a position to have and exercise, and does *have and exercise influence over another.* A fiduciary relationship implies a condition of *superiority of one of the parties over the other.* Generally, in a fiduciary relationship, the property, interest or authority of the other is *placed in the charge of the fiduciary.*

*Id.* (emphasis in original).

The court in *Denison* made clear that each of the general considerations listed above need not be present in every case in which a fiduciary relationship is alleged. However, the court emphasized that an overriding consideration in the law of fiduciary relationships was that "one may not abandon all caution and responsibility for his own protection and unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary." *Denison*, 230 Kan. at 696, 640 P.2d at 1243–44 (emphasis added). The court went on to state that "[t]his is particularly true when one ... is fully competent and able to protect his own interests." *Id.* [I]n *Paul v. North*, 191 Kan. 163, 380 P.2d 421 (1963), the Supreme Court of Kansas stated that fiduciary relationships

"may arise out of conduct of the parties evidencing an agreement to engage in a joint enterprise for the mutual benefit of the parties.... But they necessarily spring from an attitude of trust and

confidence and *are based upon some form of agreement, either express or implied, from which it can be said that the minds have met in a manner to create mutual obligations.*"

*Id.,* 191 Kan. at 170, 380 P.2d at 426 (citations omitted) (emphasis added). Although a fiduciary relationship may arise out of an agreement to act together for the mutual benefit of the parties, such a relationship cannot be established by accident or inadvertence.

"Mere concert of action, without more, does not establish a fiduciary relationship.... Undoubtedly, parties may deal at arm's length for their mutual profit. It is only when, by their concerted action, they *willingly and knowingly act for one another in a manner to impose mutual trust and confidence that a fiduciary relationship arises.*"

*Wolf v. Brungardt,* 215 Kan. 272, 285, 524 P.2d 726, 736 (1974) (emphasis added). [The Tenth Circuit Court of Appeals] has also recognized that conscious assumption of the alleged fiduciary duty is a mandatory element under Kansas law. *See Hotmar v. Lowell H. Listrom & Co., Inc.,* 808 F.2d 1384, 1387 n. 3 (10th Cir.1987); *cf.* 36A C.J.S. Fiduciary, 385 (1955) ("As a general rule, a fiduciary relationship is established only when it is shown that the confidence reposed by one person was actually accepted by the other, and merely reposing confidence in another may not, of itself, create the relationship") (footnotes omitted).

*Rajala,* 919 F.2d at 614–615 (emphasis in original).

We find the Tenth Circuit's decision in *Rajala* particularly on point and well-reasoned. There, the plaintiff, a manufacturer of plastic films, sued a chemical company engaged in the production of resin products used in making plastic film. Plaintiff asserted, among other claims, a cause of action for breach of fiduciary duty. The district judge dismissed all of plaintiff's other claims by directed verdict or summary judgment; however, he allowed the claim for breach of fiduciary duty to proceed to trial. The jury returned a verdict in favor of plaintiff on the breach of fiduciary duty claim, whereupon defendant moved for judgment notwithstanding the verdict. The Tenth Circuit, in reversing the district court's denial of defendant's J.N.O.V. motion, concluded that the evidence was insufficient to establish a fiduciary relationship between the parties.

In reaching its decision, the Tenth Circuit emphasized that there was no evidence that the defendant had ever consciously assumed the duties of a fiduciary. *Id.* at 623. The court further noted that, although the evidence at trial demonstrated that defendant had intended to act in a manner which would have consequential benefits for plaintiff, nothing in the record suggested that any authorized representative of defendant ever intended to assume fiduciary duties on behalf of plaintiff. *Id.* No evidence demonstrated that defendant was acting "primarily for the benefit of" the plaintiff. *Id.* at 624. In addition, "[t]he parties did place confidence in each other, but once again, that was a confidence based on commercial self-interest in which both parties had the power contractually to protect their own interests however they chose." *Id.* The fact that the parties had entered into a five-year confidentiality agreement was insufficient to establish a fiduciary relationship. *Id.*

We also are persuaded by the Tenth Circuit's reasoning in *Flight Concepts,* 38 F.3d 1152 (10th Cir.1994), where the court affirmed the entry of summary judgment in favor of defendant on a claim for breach of fiduciary duty. There, plaintiff, a corporation, had developed a concept for a new military airplane. Plaintiff granted to defendant, an airplane manufacturer, the exclusive right to produce and sell the new airplane in exchange for royalties. The parties agreed to enter into an exclusive "teaming arrangement" to develop a marketing strategy for the airplane. The parties also entered into a confidentiality agreement to protect their technical data, and a license agreement giving the defendant the exclusive right to manufacture and sell the airplane. When the defendant terminated the license agreement without producing or selling any airplanes, and, instead, designed and manufactured a similar airplane on its own, the plaintiff sued

defendant for breach of fiduciary duty, among other things.

The court, in holding that the defendant did not owe plaintiff any fiduciary duty, noted:

> The record contains no evidence that [the defendants] deliberately assumed the responsibilities of fiduciary in their dealings with the [plaintiffs]. Nor do the facts as alleged by plaintiffs show that [defendants] agreed to act for plaintiffs' benefit. We conclude that defendants were not fiduciaries and had no duty to disclose information to plaintiffs by virtue of that relationship.

*Id.* at 1158.

Here, as in *Rajala* and *Flight Concepts,* the record is devoid of any evidence that any authorized agent of Discover Card consciously or deliberately assumed the responsibilities of a fiduciary in Discover Card's dealings with PulseCard. Nor do the undisputed facts reveal that Discover Card acted, or agreed to act, for PulseCard's direct and primary benefit. Furthermore, there is nothing in the record before the court suggesting that PulseCard placed Discover Card in charge of its business, interests, or assets. We conclude PulseCard has failed to meet its burden of proving a fiduciary relationship by clear and convincing evidence.

In sum, for the foregoing reasons, the court finds that PulseCard has failed to produce affirmative or specific facts that could lead a rational trier of fact to conclude, by clear and convincing evidence, that a fiduciary relationship existed between the parties under any of the theories advanced by Pulse-Card. The undisputed material facts show that no fiduciary relationship was created between PulseCard and Discover Card by an agency theory, or through a joint venture between the parties. Accordingly, summary judgment is entered in favor of defendant Discover Card on Count II.

### Count III: Tortious Interference with Existing Contracts and with Prospective Business Advantage

■ In Count III of the pre-trial order, PulseCard asserts claims against Discover Card based on the theories of tortious interference with contract, and tortious interference with a prospective business advantage. Kansas law has long recognized that one who, without justification, induces or causes a breach of a contract to which it is not a party will be answerable for damages caused thereby. *DP–Tek, Inc. v. AT & T Global Information Solutions Co.,* 891 F.Supp. 1510, 1515 (D.Kan.1995) (citing *Turner v. Halliburton Co.,* 240 Kan. 1, Syl. ¶ 7, 722 P.2d 1106 (1986)). Under Kansas law, the elements essential to recovery for tortious interference with a contract are: (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his or her intentional procurement of its breach; (4) the absence of justification; and (5) *damages resulting therefrom.* *Dickens v. Snodgrass, Dunlap & Co.,* 255 Kan. 164, 169, 872 P.2d 252 (1994) (emphasis added).

■ The elements of a cause of action for tortious interference with a prospective business advantage or relationship under Kansas law are: (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) *damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct.* *DP–Tek, Inc.,* 891 F.Supp. at 1520 (citing *Turner v. Halliburton Co.,* 240 Kan. 1, 12, 722 P.2d 1106 (1986)) (emphasis added).

■ Tortious interference with a prospective business relationship requires some type of communication between the defendant and the third party in which the defendant induces the third party not to engage in a prospective contract or business relation with the plaintiff. A plaintiff claiming improper influence must demonstrate that the defendant knew of prospective contractual relations but intentionally interfered with them without justification. *Id.* (citing *Women's Health Care Services, P.A. v. Operation Rescue–National,* 773 F.Supp. 258, 268 (D.Kan.1991), *rev'd on other grounds,* 24 F.3d 107 (10th Cir.1994)).

In *DP–Tek, Inc. v. AT & T Global Information Solutions Company,* 891 F.Supp. 1510 (D.Kan.1995), Judge Lungstrum underwent a lengthy analysis of Kansas law regarding the claims of tortious interference with an existing contract and tortious interference with a prospective business relationship. In that case, Venture Stores Inc. ("Venture") solicited bids from computer vendors for upgrading its in-store computer system. Both the plaintiff, DP–Tek, and NCR[2] submitted proposals to Venture. When NCR was eventually awarded the supply contract, DP–Tek filed suit, claiming tortious interference with contract and tortious interference with a prospective business relationship.

As to the tortious interference with existing contract claim, the court determined that summary judgment was appropriate, because all of NCR's actions upon which DP–Tek based its claim occurred prior to the existence of a valid contract. The court next addressed plaintiff's claim for tortious interference with a prospective business relationship. The court adopted the business competitor privilege set forth in the Restatement (Second) of Torts § 768, which dealt with determining whether a business competitor's interference with a prospective business relationship is proper or improper. *Id.* at 1521.

In its analysis, the court focused on section (1)(b) of § 768, which provides that "[o]ne who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor … does not interfere improperly with the other's relation if the actor does not employ wrongful means." The court adopted as the proper test for whether conduct qualifies as wrongful means to be whether the conduct itself is capable of forming the basis for liability of the actor. *Id.* at 1523. After setting forth

the applicable law, Judge Lungstrum considered each of the actions by NCR which DP–Tek contended constituted wrongful means.[3] The court concluded, after careful examination of the evidence presented by DP–Tek regarding each of the alleged wrongful actions, along with the applicable law, that none of the alleged actions undertaken by NCR constituted "wrongful means" sufficient to overcome NCR's competitive privilege to form the basis for a tortious interference claim. *Id.* at 1524.

Discover Card argues that when the record of this case is examined in light of the elements required under Kansas law to constitute tortious interference with existing contracts or expected business relations claims, and the applicable law as set forth in the *DP–Tek* case, it is apparent that there is an absence of evidence to support Pulse-Card's tortious interference claims.

The court agrees. For both tortious interference theories, PulseCard must show that intentional, unjustified conduct *by Discover Card caused it damages. See Dickens,* 255 Kan. at 169, 872 P.2d 252 (regarding elements of claim of tortious interference with existing contract); *Turner,* 240 Kan. at 12, 722 P.2d 1106 (regarding elements of claim of tortious interference with prospective business relationship). PulseCard has failed to present a single fact showing that Discover Card engaged in any conduct that either procured a breach of an existing contract with PulseCard or caused PulseCard not to realize a business expectancy.

The only evidence that plaintiff has presented to support these claims is a list of 101 merchants, consisting of various dentists and medical associations, who terminated their PulseCard programs. This list of 101 mer-

---

**2.** Defendant AT & T acquired NCR in 1991, and subsequently renamed the business AT & T Global Information Solutions Company.

**3.** DP–Tek contended that the following actions by NCR constituted wrongful means: (1) conducting unauthorized and covert disassembly of DP–Tek's prototype and acquiring confidential, proprietary information unavailable anywhere else; (2) disparaging DP–Tek's prototypes and capabilities with inaccurate and unverified information; (3) extracting DP–Tek's confidential

pricing from Venture after the bidding was closed and the contract awarded and using that price as a guide for its own belated price reduction; (4) using RCS (a software company and NCR subsidiary) as a source of confidential information concerning DP–Tek; and (5) derailing DP–Tek's chances of successfully participating in the project by refusing Venture's request for the source code to RCS' software. *DP–Tek,* 891 F.Supp. at 1523–24.

chants, however, represents the entire universe of merchants with whom Discover Card could have possibly interfered.[4] There is no evidence in the record before the court to indicate that the reason any merchant terminated a relationship with PulseCard was because of intentional, unjustified actions by Discover Card.

Jackie Pruitt, PulseCard's national account manager, testified in her deposition that when merchants leave PulseCard, she doesn't think that PulseCard knows why they are leaving.

Charlene Osborn, PulseCard's operations manager, testified that she is not aware of any person at PulseCard who has contacted the individuals who terminated their Pulse-Card agreements in order to ascertain why those individuals terminated their agreements. Osborn further testified that occasionally merchants would terminate their PulseCard agreements simply because they would close their medical practice.

Dr. Potter, when questioned specifically in his deposition as to whether he had any records to support the allegations that Discover Card agents had called on existing or pending PulseCard merchants and engaged in tortious acts, responded "I have personal phone calls and conversations with doctors, yes. No written records that I know of." When Potter was asked to identify a doctor or any other health care provider that terminated his or her agreement with PulseCard due to an action by a Discover Card representative, he responded that there was "a doctor last month who did it." Potter did not know the name of the doctor, and to date

plaintiff has failed to come forward with evidence specifically identifying the doctor to whom Potter referred. The only reason stated by Potter for why the doctor terminated his relationship with PulseCard was because "Discover Card came in and said we'll give you a better deal." Under the applicable law, simply "giving someone a better deal" does not constitute wrongful means by Discover Card sufficient to trigger liability under a tortious interference theory. *See DP-Tek,* 891 F.Supp. at 1523–26.

Finally, we conclude that, based on the record before us, we need not examine each action of Discover Card that PulseCard contends constituted wrongful means.[5] Even assuming, arguendo, that PulseCard has made a sufficient showing that Discover Card engaged in "wrongful means," such a showing is insufficient to preclude summary judgment where, as here, plaintiff has failed to come forward with evidence as to the final element of both tortious interference claims: that PulseCard suffered damages directly resulting from Discover Card's tortious conduct.

In response to Discover Card's motion for summary judgment on the tortious interference claims, PulseCard first asserts that Discover Card has waived any defense of justification because Discover Card failed to plead it as an affirmative defense. This argument is without merit. First, while several Kansas cases do refer in dicta to justification as an "affirmative defense," establishing an absence of justification is an essential element of PulseCard's tortious interference claims. *See Snodgrass,* 255 Kan. at 169, 872 P.2d 252;

---

**4.** During Charlene Osborn's deposition, in response to Discover Card's attorney's contention that "what you gave me was a list simply of people who have terminated their relationship with PulseCard irrespective of any known reasons to why they did that," PulseCard's attorney stated: "And we believe in good faith that these [101] merchants *are likely* to have been merchants who were terminated as a result of alleged conduct of Discover Card as stated in Counts 3 and 4 based on the proximity in time." (emphasis added).

**5.** According to Count III of the pre-trial order, it appears PulseCard contends that the following actions by Discover Card constituted wrongful means: (1) calling on existing or pending Pulse-

Card merchants, and making false, disparaging and defamatory remarks impugning PulseCard's viability and business reputation; (2) replacing existing advertising material in merchant locations which deleted references to PulseCard; (3) falsely claiming that PulseCard had violated agreements with Discover Card, and claiming that PulseCard had no authority to quote rates, accept applications, or submit merchant contracts for Discover Card acceptance; and (4) inducing or causing the breach of contracts between PulseCard, SPS, and the AGD by using confidential and trade secret information to compete with PulseCard and by acting in concert with SPS to injure PulseCard, in the manner set forth in Counts I through IX.

*Turner*, 240 Kan. at 12, 722 P.2d 1106 ("Kansas has long recognized that a party who, without justification, induces or causes a breach of contract will be answerable for damages caused thereby."). In short, plaintiff is not relieved of its burden of proving an essential element of its claim simply because that element was not pled as an affirmative defense. Second, we find that because PulseCard has failed to present specific facts demonstrating that Discover Card undertook any intentional acts, be they justified or unjustified, that caused PulseCard damages, Discover Card need not rely on a justification *defense* for purposes of this summary judgment motion.

PulseCard also claims that it should be excused from producing any evidence as to tortious conduct by Discover Card on the grounds that Discover Card has failed to comply with certain discovery: "Even if PulseCard were required to parade in witnesses to testify that they breached their contract with PulseCard because of Discover Card's wrongful means, Discover Card would be estopped from attacking PulseCard's evidence on this issue because of Discover Card's willful noncompliance with discovery orders." PulseCard's Memorandum in Response to Discover Card's Motion for Summary Judgment, p. 60. The record does not bear out PulseCard's assertions. More specifically, the affidavit of Randall Hendricks, attorney for Discover Card, and the letter exhibits attached thereto, indicate that Discover Card attempted to timely make available to PulseCard the discovery documents at issue. Thus, we find PulseCard is not excused from its burden of producing affirmative, specific evidence demonstrating tortious conduct by Discover Card that caused PulseCard damages.

We conclude PulseCard has failed to make a showing sufficient to establish the existence of elements essential to its tortious interference claims, to-wit, that Discover Card engaged in any type of intentional tortious conduct that caused PulseCard damages. Accordingly, Discover Card is entitled to summary judgment on those claims.

*Count IV: Defamation Claim*

Since the time the instant motion for partial summary judgment was filed, the pre-trial order has been entered in the case. The pre-trial order reflects that PulseCard has withdrawn Count IV, its defamation claim against Discover Card, in its entirety. Therefore, the court finds that Discover Card's request for summary judgment as to Count IV should be denied as moot.

IT IS THEREFORE ORDERED that the motion of Discover Card Services, Inc., for partial summary judgment (Doc. # 225) is granted in part and denied in part. The court grants summary judgment in favor of Discover Card as to Count II and Count III of the pre-trial order. Discover Card's request for summary judgment as to Count IV is denied as moot.

IT IS FURTHER ORDERED that the request of plaintiff PulseCard, Inc., for oral argument (Doc. # 366) is denied.