669 F.2d 617
 J. P. JOHNSTON, Plaintiff-Appellant,
v.
Ed HERSCHLER, individually and as Governor of the State of
Wyoming, and Frank Mendicino, individually and as
Attorney General for the State of
Wyoming, Defendants-Appellees.
 No. 80-1342.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted Nov. 17, 1981.
Decided Jan. 21, 1982.
 
 Donald A. Brenner, Denver, Colo., for plaintiff-appellant.
 Bruce A. Salzburg, Senior Asst. Atty. Gen., Cheyenne, Wyo. (John D. Troughton, Atty. Gen., State of Wyo., Cheyenne, Wyo., with him on the brief), for defendants-appellees.
 Before SETH, BREITENSTEIN and LOGAN, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 Plaintiff-appellant Johnston, brought this action under 42 U.S.C. § 1983, claiming monetary damages from defendants-appellees Herschler and Mendicino, who at the time of the pertinent events were the Governor and Attorney General respectively of the State of Wyoming. Plaintiff claims a wrongful discharge in violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution. The district court entered summary judgment for the defendants and plaintiff appeals. We affirm.
 
 
 2
 The controlling facts are not disputed. Plaintiff, a lawyer, was employed in 1976 as a special agent in the Division of Criminal Investigation, DCI, a state agency under the office of the Attorney General. See W.S.1977, § 9-2-530. In Wyoming the Attorney General is appointed by, and serves at the pleasure of, the Governor. Compton, a former director of DCI who was discharged, made publicized charges of corruption in the operation of the state government. A state grand jury was convened to investigate the charges. In June, 1977, the Governor ordered that all state employees cooperate with the grand jury investigation or be subject to dismissal. The record is unclear whether the order was verbal or written but all parties agree that its substance was as stated.
 
 
 3
 Plaintiff was subpoenaed on January 5, 1978, to appear before the grand jury. He was told that he would be asked to testify about a trip which he and Compton had made to Arkansas to investigate a homicide. The Grand Jury investigation was handled by a special prosecutor. Johnston claims that he was requested by the special prosecutor's staff not to discuss his expected grand jury testimony with anyone.
 
 
 4
 The Governor employed an investigator named Ford to collect matters related to the grand jury inquiry. In a memorandum drafted by Ford the Governor requested Johnston to give a summary of his trip to Arkansas with Compton. Johnston declined to summarize the trip on the ground that instructions from the special prosecutors prevented him from doing so.
 
 
 5
 On January 10, 1978, plaintiff met with Ford and the Acting Director of DCI. The Acting Director told plaintiff that on orders of the Governor communicated by the Attorney General he, the Acting Director, ordered plaintiff to answer all questions regarding travel vouchers pertaining to the Arkansas trip. Plaintiff refused to answer Ford's questions on the ground that the trip was being investigated by the grand jury. Ford showed plaintiff a letter from the special prosecutor disclaiming any such order and saying that he had made a request to witnesses not to discuss the subject of inquiry in order to avoid publicity.
 
 
 6
 After being shown the letter plaintiff continued to refuse to discuss the Arkansas trip. Plaintiff made no Fifth Amendment claim at the meeting. He then discussed the matter with the special prosecutor's staff who suggested that he get the order in writing. Two of the staff investigators testified in deposition that plaintiff made no self-incrimination or Fifth Amendment claim at their meeting. Later plaintiff was called to the Attorney General's Office and was told by the Attorney General that he was discharged for refusing to obey a direct order to discuss the trip.
 
 
 7
 Plaintiff claims that his discharge violated his Fifth Amendment right protecting him against self-incrimination. In the first of his two depositions he said that self-incrimination was not the reason for his refusal to answer. In the second, he said that his Fifth Amendment right was violated because he was not given a chance to exercise it. Nothing in the record shows that at any time plaintiff actually asserted his right against self-incrimination. Nothing in the record shows any basis for a fear of self-incrimination. Charges of criminal liability were not pending, were not contemplated, and were never brought. In his meetings with the investigators and with his superiors, he refused to answer on the ground that an answer would violate an order of the prosecution staff. That staff denied any such order.
 
 
 8
 "The privilege against self-incrimination is one which normally must be claimed by the individual who seeks to avail himself of its protection." Communist Party of the United States v. Subversive Activities Control Board, 367 U.S. 1, 107, 81 S.Ct. 1357, 1416, 6 L.Ed.2d 625. Plaintiff's fear of discharge is unrelated to a criminal activity. The Fifth Amendment protects against "real dangers, not remote and speculative possibilities." Zicarelli v. New Jersey State Commission of Investigation, 406 U.S. 472, 478, 92 S.Ct. 1670, 1675, 32 L.Ed.2d 234. Cases such as Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562, Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082, and Uniformed Sanitation Men Association, Inc. v. Commissioner, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089, are not in point because in them employees were required to waive their constitutional rights or be fired and their statements were later used against them in criminal prosecutions. Kalkines v. United States, Ct.Cl., 473 F.2d 1391, is distinguishable because a criminal investigation was conducted concurrently with a civil inquiry related to possible disciplinary proceedings. In the instant case no criminal liability was ever threatened against plaintiff. On the record presented, he had nothing to fear but discharge and that is not a hazard from which the Fifth Amendment incrimination clause provides protection.
 
 
 9
 After his discharge, plaintiff petitioned the Wyoming Personnel Review Board for determination of the propriety of his dismissal. The Board, created by W.S.1977, § 9-3-2023(b), is composed of the Governor, the Director of the affected department, and the Administrator of the Personnel Division. One member of the Board recused himself. Plaintiff moved for the disqualification of the Governor and the other Board member. They then disqualified themselves. Plaintiff requested the Governor to appoint new members to the Board, and the Governor refused.
 
 
 10
 Plaintiff contends that he was entitled to a pre-discharge hearing. The Wyoming Personnel Rules, attached as an appendix to appellee's brief, do not provide for a pre-discharge hearing but provide a detailed procedure for post-discharge hearings with provision for appropriate relief. See Personnel Rules, Chap. XIII. On the record, the post-discharge procedure adequately protects plaintiff's due process rights. See Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15.
 
 
 11
 Plaintiff bases his due process claim on the refusal of the Governor to appoint replacements on the Personnel Review Board. The Attorney General is not involved in this aspect of the case. The district court found that the Governor determined that he had no authority to appoint replacements on the Personnel Review Board and that his action in that regard was in an adjudicative capacity which absolutely immunized him from § 1983 liability. In Butz v. Economou, 438 U.S. 478, 512-513, 98 S.Ct. 2894, 2913-2914, 57 L.Ed.2d 895, the Supreme Court said:
 
 
 12
 "* * * adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages."
 
 
 13
 In this regard, no distinction exists between a federal official and a state official sued under § 1983. Id. at 504, 98 S.Ct. at 2909. The need to preserve independent judgment without fear of monetary liability exists in each situation, Id. at 514, 98 S.Ct. at 2914, and requires absolute immunity.
 
 
 14
 Because we hold that this § 1983 action must fail as to each defendant, we have no need to discuss the question whether a § 1983 action can be maintained when the complainant fails to exhaust the available state and administrative remedies.
 
 
 15
 Affirmed.