Robert L. WILHELM,
Plaintiff-Appellant,

v.

CONTINENTAL TITLE COMPANY, a Colorado corporation, Angelo J. Visconti, individually and in his capacity as President of Continental Title Company, and Dorothy J. Porter, individually and in her official capacity as Director of the Colorado Civil Rights Division, Defendants-Appellees.

No. 82–1747.

United States Court of Appeals,
Tenth Circuit.

Nov. 7, 1983.

Certiorari Denied March 19, 1984.
See 104 S.Ct. 1601.

David L. Smith, Denver, Colo., for plaintiff-appellant.

Perry L. Goorman of Eiberger, Stacy & Smith, Denver, Colo., for defendants-appellees Continental Title Co. and Angelo J. Visconti.

Timothy R. Arnold, Asst. Atty. Gen., State of Colo., Denver, Colo. (J.D. MacFarlane, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., and William Levis, Asst. Atty. Gen., Denver, Colo., on brief), for defendant-appellee Dorothy J. Porter.

Before SETH, Chief Judge, McKAY, Circuit Judge, and BOHANON, District Judge *.

* Honorable Luther L. Bohanon, United States Senior District Judge for the Northern, Eastern

SETH, Chief Judge.

Robert L. Wilhelm appeals the *dismissal* of his claims asserted under 42 U.S.C. § 1985(3), and Colo.Rev.Stat. § 24–34–301, against defendants-appellees Continental Title Insurance Company and its president, Angelo J. Visconti. Claims under § 1983 were alleged against Dorothy J. Porter, Director of the Colorado Civil Rights Division. The federal causes were dismissed for failure to state a cause of action—that a handicap was not a basis for a claim under 42 U.S.C. § 1985 or § 1986. The cause against defendant Porter was dismissed on the ground that she had official immunity. The cause under the state statute was dismissed by the trial court on the ground that there was nothing to support the pendent claim and that there was pending in the state courts a suit asserting the very same cause of action.

Appellant worked as a real estate title insurance salesman at Continental for a year and a half before being promoted to branch office manager in January. In March he learned he had multiple sclerosis, advised his employer, in less than a month he was demoted, and in May discharged. Appellant filed an employment discrimination charge based on handicap with the Colorado Civil Rights Commission. The Commission determined that there was probable cause to believe his charges were true but defendant Porter closed the file due to failure of conciliation.

The questions presented on appeal are: whether handicapped persons constitute a class entitled to the protection of § 1985; whether the district court abused its discretion in declining to exercise pendent jurisdiction over the claim based on Colo.Rev. Stat. § 24–34–301 *et seq.,* and whether Dorothy J. Porter has absolute immunity from suit under 42 U.S.C. § 1983.

■ In his first claim for relief, appellant invoked § 1985(3) by alleging that he, as a handicapped person, was a member of a

and Western Districts of Oklahoma, sitting by designation.

class for which that section was intended to provide a civil remedy.

Section 1985 has been interpreted in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338, to require that private conspiracies be based on some type of class-based discriminatory animus. The Court stated:

> "The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." (Emphasis supplied.)

The district court based its dismissal of the § 1985(3) claim on appellant's failure to establish that the alleged conspiracy was motivated by a class-based invidiously discriminatory animus. Referring to the decision in *Lessman v. McCormick,* 591 F.2d 605 (10th Cir.), the district court said, "It is not sufficient to state a claim under Section 1985(3) to allege individual discriminatory animus or even group animus unless the discrimination can be said to be invidious."

In *Lessman,* we denied appellant's claim under § 1985 that the class of debtors of which she was a member was subject to invidious discrimination because, as in *Ward v. St. Anthony Hospital,* 476 F.2d 671 (10th Cir.), the allegations did not show the plaintiff to be the object of class-based invidiously discriminatory animus. We cited *Harrison v. Brooks,* 519 F.2d 1358 (1st Cir.), for the requirement that the criteria for the definition of the class must be invidious and the conspiracy against plaintiff was "because" of class membership.

This appeal, as mentioned, reaches us on the dismissal of the § 1985 cause for failure to state a claim, and must be examined under the applicable standard.

We have some serious doubts as to whether there can be a conspiracy between defendant Visconti and the corporation he heads but the issue was not raised in the corporate-officer context, and the trial court did not pass on the question, and we will not do so.

In *United Brotherhood of Carpenters v. Scott,* —— U.S. ——, 103 S.Ct. 3352, 77 L.Ed.2d 1049, the Court was considering a conspiracy directed by a pro-union group against a non-union group. The Court made it clear that § 1985(3) did not cover conspiracies motivated by economic, political or commercial animus. The opinion (as in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338), contains a significant analysis of reasons why 42 U.S.C. § 1985(3) was enacted and the conditions sought to be remedied. The opinion puts emphasis on the nature of the animus and motivation as to which the legislation was directed, and the groups sought to be protected. The Court describes conditions prevailing in the South in 1871, and the debates in Congress centering on the broad scope of the proposed statute as originally introduced. The Court in *Scott* said:

> "As we interpreted the legislative history 12 years ago in *Griffin,* the narrowing amendment 'centered entirely on the animus or motivation that would be required....'"

The Court accords great weight to the "limiting" or narrowing amendment which was adopted and altered the bill as introduced.

The Court in *Scott* quotes from *Griffin* as to the importance of the amendment:

> "'The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. See the remarks of Representatives Willard and Shellabarger, quoted *supra,* at 100. The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a

deprivation of the equal enjoyment of rights secured by the law to all.' *Id.,* at 102 (footnotes omitted)." (Emphasis supplied.)

The Court in *Scott* continued as to the above quotation:

"This conclusion was warranted by the legislative history, was reaffirmed in [*Great American Fed. S. & L. Assn. v.*] *Novotny, supra* [442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979)], and we accept it as the authoritative construction of the statute."

Of the case before it the Court said:

"Both courts below answered that question; both held that the section not only reaches conspiracies other than those motivated by racial bias but also forbids conspiracies against workers who refuse to join a union. We disagree with the latter conclusion and do not affirm the former."

The Court in *Scott* discussed at some length the conditions prevailing in 1871, the actions of the Klan and again the "narrowing amendment," and said:

"The narrowing amendment, which changed § 1985(3) to its present form, was proposed, debated, and adopted there, and the Senate made only technical changes to the bill. Senator Edmunds's views, since he managed the bill on the floor of the Senate, are not without weight. But we were aware of his views in *Griffin,* 403 U.S., at 102 n. 9 [91 S.Ct. at 1798 n. 9], and still withheld judgment on the question whether § 1985(3), as enacted, went any farther than its central concern—combatting the violent and other efforts of the Klan and its allies to resist and to frustrate the intended effects of the Thirteenth, Fourteenth, and Fifteenth Amendments. Lacking other evidence of congressional intention, we follow the same course here."

As to private conspiracies, the Court has thus held that § 1985(3) protects against rights under the Thirteenth Amendment and the right to travel guaranteed by the Federal Constitution, also certain equal protection rights not limited by the constraints of the Fourteenth Amendment as to state action. The Court has held that § 1985(3) does not protect under the First Amendment against wholly private conspiracies.

In summary as to the *Scott* opinion, we find nothing therein to give any encouragement whatever to extend § 1985 to classes other than those involved in the strife in the South in 1871 with which Congress was then concerned. In fact from *Scott* we get a signal that the classes covered by § 1985 should not be extended beyond those already expressly provided by the Court.

In the case before us the Amended Complaint alleges that plaintiff had a particular and serious disease which did or would have physical manifestations. He advised the company of his condition and asserts he was demoted and fired as a consequence. It is apparent that different individuals are handicapped in vastly different ways, for different periods of time, and to very different degrees or extent. The variations in each category are infinite and as a consequence the term "handicapped" does not have a definition capable of a reasonably precise application for the purposes before us. The plaintiff alleged his "membership in a class of handicapped persons." Plaintiff asserts that "[t]he criteria defining the class of handicapped persons are invidious under Colorado and federal law." The Complaint does not contain a description of a class of persons or group that is sufficiently definite or precise to set against the "class of persons" terminology in § 1985(3). There is no ascertainable class described in the Amended Complaint for the purposes under consideration although there may be for other purposes. Plaintiff declined to further amend and asked for a final judgment.

We feel compelled by *United Brotherhood of Carpenters v. Scott,* —— U.S. ——, 103 S.Ct. 3352, 77 L.Ed.2d 1049, and by *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338, to hold that even if there could be here developed by further pleading a class of handicapped persons with sufficient conditions or factors in common derived from their *physical* condition to be

ascertainable or identifiable, it could not come within the provisions of 42 U.S.C. § 1985(3).

In our above examination of the opinion in *United Brotherhood of Carpenters v. Scott,* —— U.S. ——, 103 S.Ct. 3352, 77 L.Ed.2d 1049, we described the reference to limiting opinions; the emphasis upon the conditions that gave rise to § 1985(3); and more particularly the classes or groups which were then involved in the struggle. The nature of groups so involved, as described in *Scott,* must influence greatly any analysis of the scope of the act. The adoption of the "limiting amendment" to sort out incidents with no animus or motivation of the kind under consideration is also a dominating factor.

We are concerned with a statute enacted for a particular purpose and to meet particular conditions. The rights and privileges sought to be protected (as contrasted to the "class") are diverse and with the constitutional overtones are to be construed broadly. However, the classes or groups to be protected are instead to be derived from statutory construction. This in our view the Supreme Court has done in *Scott* and *Griffin.* From *Scott* we repeat part of a quotation appearing above. Thus after referring to *Griffin* and noting that the Court there withheld judgment as to whether § 1985(3) "went any farther than its central concern—combatting the violent and other efforts of the Klan and its allies to resist and to frustrate the intended affects of the Thirteenth, Fourteenth, and Fifteenth Amendments. Lacking other evidence of congressional intention, we follow the same course here." Thus the Court also withheld judgment, but the significant part of the statement is that the refusal to go farther was placed on the reason—lacking other evidence of congressional intention. This came after the examinations of such history-evidence in *Griffin* and *Scott,* as well as prior cases. We must conclude that a class of "handicapped persons" was not in the contemplation of Congress in 1871, and was not included as a class in what is now § 1985(3). *See Cain v. Archdiocese of Kansas City, Kansas,* 508 F.Supp. 1021 (D.Kan.).

■ The appellant urges that it was error for the trial court to dismiss the pendent cause of action based on the state statute. The Supreme Court in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218, held that pendent jurisdiction is "a doctrine of discretion," and that "[i]ts justification lies in considerations of judicial economy, convenience and fairness to litigants . . .," and "[n]eedless decisions of state law should be avoided . . . ." The Court also held that if the federal claims were dismissed before trial the pendent claims should be dismissed. *See also Clappier v. Flynn,* 605 F.2d 519 (10th Cir.), and our prior cases.

■ We find no error in the dismissal of the pendent claim.

The district court dismissed the § 1983 claim against Dorothy J. Porter on the basis of her absolute official immunity. The claim was brought after she closed the appellant's file due to failure of conciliation.

In dismissing the claim, the district court relied on *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895, and *Johnston v. Herschler,* 669 F.2d 617 (10th Cir.). The Court in *Butz* determined that federal agency officials whose duties involve adjudicatory or prosecutorial functions are absolutely immune from suits for damages. The Court said:

"We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages. . . .

. . . .

"We also believe that agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts."

438 U.S. at 512–13, 515, 98 S.Ct. at 2913–14, 2915.

The Court did not distinguish between state and federal officials for purposes of immunity:

"[W]e deem it untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials."

*Id.,* at 504, 98 S.Ct. at 2909.

The district court followed *Butz* and our opinion in *Johnston* (Governor of Wyoming acting in adjudicatory capacity is absolutely immune from § 1983 liability) to find that "an adjudication within either a federal or state administrative agency is immune from suits for damages."

With respect to Dorothy Porter's duties under Colo.Rev.Stat. § 24–34–301 *et seq.,* the district court found:

"As Director of the Colorado Civil Rights Division, Ms. Porter is required by statute to investigate charges of discrimination, make a finding of probable cause and report to the commission when conciliation efforts fail. Thus, she is in a position in the state administrative process that is similar to that of a judge, hearing officer or prosecutor. It is therefore logical that she should enjoy immunity in that regard."

II R. 10.

The district court did not err in concluding that Dorothy Porter has absolute immunity. The adjudicatory and prosecutorial nature of her responsibilities is clear.

The judgment of the district court is affirmed.

McKAY, Circuit Judge, concurring:

While I agree generally with the opinion of the court, I add this concurrence to stress the importance of limiting the court's decision solely to the facts before us. Although I agree that *United Brotherhood of Carpenters v. Scott,* —— U.S. ——, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) (5–4), does not leave room for the extension of § 1985(3) to private conspiracies involving the facts of this case, I do not read *Scott* to foreclose the application of § 1985(3) to conspiracies where the animus is directed toward gender-based classifications or political groups,

e.g., "Republicans". *Scott* at ——, 103 S.Ct. at 3360–61. The five-member majority's refusal in *Scott* to affirm the Fifth Circuit's conclusion that classes other than race might be actionable under § 1985(3) should not be read as broadly as this court has attempted to do.

Since the case before us does not present issues of animus directed toward classifications based upon gender, religion or national origin, we leave for another day the resolution of whether a properly pleaded set of facts might bring a class other than race within § 1985(3) and *Scott.*