Lawrence J. STEINERT, Plaintiff,

v.

THE WINN GROUP, INC., and James
G. Winn, Defendants.

No. CIV. A. 98–2564–CM.

United States District Court,
D. Kansas.

Jan. 27, 2000.

John B. Gage, II, The Gage Law Firm, P.C., Overland Park, KS, for Lawrence J Steinert, plaintiff.

J. Nick Badgerow, Jeannie M. DeVeney, Spencer, Fane, Britt & Browne, Overland Park, KS, for Winn Group, Inc., James G Winn, defendants.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

This case arises out of an employment agency placement arrangement entered into between plaintiff Lawrence J. Steinert and defendants James G. Winn and the Winn Group, Inc. Plaintiff alleges defendants violated his rights both during the course of and as a result of his dealings with defendants. Plaintiff claims his civil rights were violated under 42 U.S.C. §§ 1983, 1985(2), and 1985(3). Plaintiff also claims violations of the Kansas Private Employment Agencies Act (KPEAA), Kan. Stat. Ann. § 44–408 *et seq.* and the Texas Personnel Employment Services Act (TPESA), Tex. Civ. Stat. Ann. § 5221a–7 *et seq.* Finally, plaintiff brings several tort claims alleging a breach of fiduciary duty, breach of the duty of good faith and fair dealing, negligence, intentional and/or negligent exposure to litigation by a third party, fraud, and conspiracy to defraud.

This matter is now before the court on defendants' motion to dismiss and to strike portions of the complaint (Doc. 13). Defendants seek to dismiss plaintiff's claims under Section 1983 and 1985 (Count IX), the KPEAA (Count I), portions of his claims under the TPESA (Count II), and his tort claims of breach of fiduciary duty (Count III), breach of the duty of good faith and fair dealing (Count IV), and intentional and/or negligent exposure to litigation by a third party (Count VI). Defendants also seek to strike any reference

to punitive damages in Count I and Counts III through VIII. Plaintiff has filed a responsive opposition brief (Doc. 62)[1] and defendants have replied (Doc. 72). As set forth in detail below, defendants' motion is granted in part and denied in part.

## I. Motion to Dismiss Standards

Dismissal of a cause of action for failure to state a claim is appropriate only where it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir.1998), or when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher*, 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Witt v. Roadway Express*, 136 F.3d 1424, 1428 (10th Cir. 1998). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

## II. Motion to Dismiss Plaintiff's Section 1983, 1985(2) and 1985(3) Claims (Count IX)

Plaintiff has abandoned his section 1983 claim against defendants. A private defendant may be liable under section 1983 when it acts "under color of state law." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Defendants argue plaintiff has not

---

1. The Court recognizes the excessive length of plaintiff's opposition brief, submitted in direct contravention of this court's order regarding page length (Doc. 21) However, due to the already delayed presentation of the papers relating to the pending motion, the court will accept and consider all 72 pages of argument presented by plaintiff.

adequately alleged action under color of state law and, therefore, his section 1983 claim must be dismissed. Plaintiff agrees with the defendants' argument. In his opposition, plaintiff concedes that he "has not sufficiently alleged action under color of state law." (Pl.'s Opposition, p. 62). Therefore, defendants' motion to dismiss plaintiff's 1983 claim (Count IX) is granted.

Plaintiff also asserts claims against defendants under 42 U.S.C. § 1985. Section 1985 has three subsections. Plaintiff raises claims under Sections 1985(2) and (3).[2] He does not raise a claim under Section 1985(1). (Pl.'s Opposition, pp. 63–76).

■ Section 1985(2) provides a remedy for four distinct causes of action:

A. If two or more persons conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, ... or

B. to injure such party or witness in his person or property on account of his having so attended or testified, or

C. if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or

D. to injure him or his property for lawfully enforcing ... the right of any person, or class of persons, to the equal protection of the laws.

*Wright v. No Skiter, Inc.*, 774 F.2d 422, 425 (10th Cir.1985). Plaintiff concedes that only C and D—the causes of action addressed by the second portion of Section 1985(2)[3]—are at issue here. (Pl.'s Opposition, p. 63–65). Section 1985(3) provides a remedy when the plaintiff can show "(1) the existence of a conspiracy (2) intended to deny [him] equal protection under the laws or equal privileges and immunities of the laws (3) resulting in an injury or deprivation of federally-protected rights, and (4) an overt act in furtherance of the object of the conspiracy." *Murray v. City of Sapulpa*, 45 F.3d 1417, 1423 (10th Cir.1995) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). Both section 1985(3) and the section portion of section 1985(2) require a plaintiff to show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action." *Kush v. Rutledge*, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983); *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).

Defendants move to dismiss plaintiff's section 1985(2) and 1985(3) claims, arguing that plaintiff has failed to allege the required discriminatory animus against a covered class of persons. To state a claim

---

**2.** Plaintiff bases his Section 1985(2) claim upon the denial of his Fourteenth Amendment right to equal protection of the laws. Specifically he alleges his right (and the rights of others similarly situated) to enforce the application of the FLSA to his employment (or potential employment) with Scruggs Consulting and/or Scruggs Actuarial Service, Inc. ("Scruggs"), a non-defendant in this action, has been hindered by the threat of litigation by Scruggs in conspiracy with defendants.

Plaintiff bases his Section 1985(3) claim upon the denial of his Thirteenth Amendment rights to travel, to be free from involuntary servitude, and to contract. Specifically, plaintiff alleges that his 13th Amendment rights have been violated by Scruggs in conspiracy with defendants through the filing and prosecution of a Texas cause of action by

Scruggs against plaintiff and through the requirement that he (and others similarly situated) sign a contract of employment with an addendum requiring the return of certain moneys should they leave their employment with Scruggs prior to a three year period.

**3.** The "second" portion of section 1985(2) is that portion following its first semicolon, providing "if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws." 42 U.S.C. § 1985(2).

under section 1985(3) and the second portion of section 1985(2), plaintiff must allege that the actions taken by defendants stem from some racial or class-based, invidiously discriminatory animus. *Bisbee v. Bey,* 39 F.3d 1096, 1102 (10th Cir.1994) (absence of "class based or racial discriminatory animus" caused complaint to fail to state a claim under § 1985).

■ The Supreme Court has narrowly construed what constitutes class-based discrimination under section 1985. *United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott,* 463 U.S. 825, 837, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Generally, only those groups affiliated with "the conditions prevailing in the South in 1871" are those deemed sufficiently invidious to qualify for protection under section 1985, as this was the genesis of the animus the statute was intended to protect against. *Wilhelm v. Continental Title Co.,* 720 F.2d 1173, 1175 (10th Cir. 1983). Mindful of the narrow construction given to the statute, the Tenth Circuit determined that protection under section 1985 should not extend beyond the classes already expressly provided coverage by the Supreme Court. *Brown v. Reardon,* 770 F.2d 896, 907 (10th Cir.1985); *Wilhelm,* 720 F.2d at 1176.

■ Here, plaintiff alleges that he is part of a class of employees or potential employees of Scruggs Consulting and/or Scruggs Actuarial Service, Inc. (defendants' alleged co-conspirator) (hereinafter "Scruggs") who were recruited by defendants to work for Scruggs, coerced by Scruggs into signing contracts of adhesion, and intimidated by actual litigation and/or by the threat of litigation. Plaintiff alleges all of these actions had the effect of creating a condition of involuntary servitude, limiting the class members' constitutional right to travel, and intimidating plaintiff to deter him from prosecuting his rights under the FLSA. (Pl.'s Complaint, ¶¶ 74,75; Pl.'s Opposition, pp. 75–76). Plaintiff's class is identified by no "invidious" characteristics. *See Bray,* 506 U.S. at 274, 113 S.Ct. 753 (noting the dictionary definition of invidious is "'[t]ending to excite odium, ill will, or envy; likely to give offense; esp., unjustly and irritatingly discriminating.'" (citation omitted)). The cohesive element of the class identified is a need for employment and an affiliation with the defendants and with Scruggs. At most, plaintiff's class is identified by an economic need to find, keep, and stay in a job due to financial considerations. This is not the type of class meriting protection under section 1985, as the Supreme Court has stated that conspiracies motivated by economic animus are not covered by the Act. *Scott,* 463 U.S. at 837, 103 S.Ct. 3352. Because the class, as plead by plaintiff, fails to qualify for the protections of section 1985, plaintiff fails to state a claim under section 1985.

■ Furthermore, even if the class alleged by plaintiff were statutorily protected, plaintiff fails to allege the animus required to state a claim under section 1985(2) and 1985(3). To state a claim under section 1985, the complaint must show "invidiously discriminatory animus" on the part of the defendants. *See Griffin,* 403 U.S. at 102, 91 S.Ct. 1790. Not only must the class alleged have invidious characteristics, but the defendants' action must be taken "because of" the effect it will have on the identifiable group. *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 275–76, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). The Tenth Circuit recognized that this requires a showing of "irrational and odious class discrimination akin to racial bias-such as discrimination based on national origin or religion."' *Silkwood v. Kerr–McGee Corp.,* 637 F.2d 743, 748 (10th Cir.1980) (citing *Arnold v. Tiffany,* 359 F.Supp. 1034, 1036 (C.D.Cal.) *aff'd on other grounds,* 487 F.2d 216, 218 (9th Cir. 1973)). In essence, the plaintiff must allege defendants' actions were taken against the plaintiff because of his membership in a class with invidious characteristics. The "law requires prejudice against a class qua class." *Id.*

Here, plaintiff's complaint makes no assertion that the constitutional wrongs alleged were committed "because of" plaintiff's membership in the identified class. He simply alleges the wrongs were committed against plaintiff and others in the identified class. Plaintiff's complaint does not allege the constitutional wrongs were motivated by racial or other animus based upon the plaintiff's status as a member of the class. Instead, plaintiff alleges that the wrongs asserted were a result of a conspiracy that intended to violate the constitutional rights of individuals who worked for or would potentially work for Scruggs. He has asserted no animus in relation to the wrongs committed as required by law to state a claim under section 1985. Therefore, plaintiff fails to state a claim under section 1985.

The court recognizes plaintiff's opposition arguments seek to extend the law to include the type of class and conduct asserted in his complaint. The court does not find, based upon current law, that such extension is warranted. Because the court has determined plaintiff has failed to state a claim under both 1985(2) and 1985(3), it does not address defendants' additional arguments supporting such dismissal. Defendants' motion to dismiss plaintiff's section 1985(2) and section 1985(3) claims (Count IX) is granted.[4]

### III. Motion to Dismiss Plaintiff's Kansas Private Employment Agency Act Claim (Count I)

Plaintiff asserts a claim under the KPEAA against both defendants. The KPEAA addresses employment agencies operated to secure employment for individuals and to furnish employers with individuals to be engaged in labor. The Act prescribes criminal penalties for violations of its provisions. Kan. Stat. Ann. § 44–401 *et seq.* Plaintiff claims both defendants are covered by the Act and that a private right of action is available to him. Defendants argue plaintiff fails to state a claim under the KPEAA because the Act does not provide for a private cause of action.

The KPEAA does not explicitly provide for a private cause of action. Kan. Stat. Ann. § 44–401 *et seq.* The Act only specifies criminal penalties available for violations of its provisions. Kan. Stat. Ann. § 44–410. The parties' arguments present an issue of first impression in Kansas, as no court has previously considered whether an implied private right of action is available under the KPEAA. Courts generally will not infer a private cause of action where a statute provides criminal penalties but does not mention civil liability. *Lay v. Horizon/CMS Healthcare Corp.*, 60 F.Supp.2d 1234, 1242 (D.Kan. 1999) (citing *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) (every criminal statute passed for the benefit of some particular class of persons does not carry with it a concomitant civil damages cause of action); *Cort v. Ash*, 422 U.S. 66, 80, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) (private right of action may not be inferred from a criminal prohibition)). We are bound by the instruction of the Kansas courts on interpretations of Kansas law. *Myatt v. Hannigan*, 910 F.2d 680, 683 (10th Cir.1990) (citing *Ewing v. Winans*, 749 F.2d 607, 609 (10th Cir.1984) ("Federal courts must accept a state court's interpretation of its constitution and laws unless they are inconsistent with fundamental principles of liberty and justice.")).

---

4. Plaintiff does not address within his opposition brief whether his allegation of a First Amendment constitutional wrong supports his section 1983 or 1985 claims raised under Count IX of his complaint. (Pl.'s Opposition, pp. 62–76). As noted within the text of this Order, section 1983 requires state action. Additionally, violation of the First Amendment as the basis of a Section 1985 claim also requires state action. *Wilhelm v. Continental Title Co.*, 720 F.2d 1173, 1176 (10th Cir. 1983). Because plaintiff concedes no state action is present within the facts presented herein, his First Amendment claim may not provide the basis for either his section 1983 or 1985 claims.

■ Whether a private right of action exists under a statute is a question of law. *Kerns v. G.A.C. Inc.*, 255 Kan. 264, 281, 875 P.2d 949, 961–62 (1994). The Kansas Supreme Court set out the test used to determine whether an individual right of action exists for violation of a statute.

> [T]he test ... is whether the legislature intended to give such a right. In the absence of express provisions, the legislative intent to grant or withhold such a right is determined primarily from the language of the statute. The nature of the evil sought to be remedied and the purpose the statute was intended to accomplish may also be taken into consideration.

*Kansas State Bank v. Specialized Tr. Serv.*, 249 Kan. 348, 371, 819 P.2d 587, 603 (1991) (citing *Greenlee v. Board of County Comm'rs of Clay County*, 241 Kan. 802, 804, 740 P.2d 606 (1987)).

■ Here, plaintiff seeks to persuade the court that a private right of action exists under the statute. A review of the plain language of the statute indicates otherwise. Section 44–410 provides a criminal penalty for violation of the statute. No civil remedy is granted in 44–410 or elsewhere in the statute. Additionally, section 44–409 specifies that it is the "duty of the secretary of human resources ... to file a complaint of [ ] violation with the attorney general or with the district attorney or county attorney ... and it shall be the duty of the official informed to institute criminal proceedings for the enforcement of the penalties." Kan. Stat. Ann. § 44–409.

Further, the statute does not evidence a legislative intent to provide a remedy to individuals, such as the plaintiff here, who utilize the services of private employment agencies. Nothing in the plain language of the statute, nor its sparse legislative history indicates the Kansas legislature intended to provide such a private right. *See American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982) ("legislative purpose is expressed by the ordinary meaning of the words used").

Because there is no explicit language providing for a private right of action under KPEAA and neither the plain language of the statute nor its legislative history provide evidence of such intent, this Court will not imply a private right of action under the KPEAA. "The declaration of public policy of whether an action can be brought under the common law or pursuant to a statute is a function of the legislative branch of our government." *Brunett v. Albrecht*, 248 Kan. 634, 642, 810 P.2d 276, 283 (1991) (citation omitted). Only a criminal penalty was contemplated under the legislation.

The court has reviewed plaintiff's arguments in opposition to dismissal of his KPEAA claim and finds them unpersuasive. Further, the court has examined the case law relied upon by plaintiff, wherein the Kansas courts considered whether negligence per se may be based upon the violation of a statutory provision. These cases are distinguishable from the issue presented to the court here (*i.e.*, whether an independent statutory cause of action is available where not explicitly provided for in the text of the statute).

Giving full consideration to all provisions of the KPEAA, the limited legislative history available regarding the Act, and the parties' arguments, the Court finds no private cause of action is contemplated under the KPEAA. Because the Court finds this issue dispositive it does not reach defendants' additional arguments raised in support of their motion to dismiss plaintiff's KPEAA claims. Accordingly, defendants' motion to dismiss plaintiff's KPEAA claim (Count I) is granted.

## IV. Motion to Dismiss Portions of Plaintiff's Texas Personnel Employment Act Claims (Count II)

Plaintiff claims defendants' actions violated the Texas Personnel Employment Services Act (TPESA) by violating several of its provisions. Generally, the TPESA provides a remedy for applicants who utilize the services of a personnel service

where the strictures of the Act are not followed. Tex. Lab.Code Ann. § 5221a–7 *et seq.*

### A. Sections 7(a) and 7(c)

Plaintiff alleges defendants engaged in a personnel service within the state of Texas without being licensed as required by Sec. 7(a) of the Act and without posting the $5,000.00 bond required by Sec. 7(c) of the Act. (Pl.'s Complaint, ¶ 34(1) & (2)). Defendants argue plaintiff's allegations under sections 7(a) and 7(c) of the Texas Act fail to state a claim because defendants did not "operate" an employment service in Texas.

Section 7 of the Texas act requires that any personnel service that is "to operate in this state" shall file notification of such operation with the commissioner, pay a filing fee, receive a certificate of authority to do business as a personnel service in the state, and pay a bond in the sum of $5,000.00 payable to the State of Texas. Tex. Lab.Code Ann. 5221a–7 Sec. 7. The Texas statute does not provide a definition of "operate" within its text and no Texas court has defined "operate" within the context of the TPESA. In interpreting the TPESA, this court is governed by the principle of Texas law that all statutes should be interpreted based upon their plain language. *Drilex Systems., Inc. v. Flores,* 1 S.W.3d 112, 123 (Tex.1999) ("Legislature is presumed to intend the plain language of its legislative enactments."). Applying this principle, this Court finds that "operate" may include activities covered by the statute that are performed within the state of Texas, even where the employment agency or personnel service at issue does not reside within the state of Texas.

Here, in support of his claims plaintiff alleges that defendants contacted plaintiff, a resident of the state of Texas, by telephone and offered to represent him in seeking employment (Pl.'s Complaint, ¶¶ 1, 6), that defendants notified plaintiff of an employment opportunity with Scruggs located in Dallas, Texas (Pl.'s Complaint, ¶ 11), that defendants made representations to plaintiff about potential employment with Scruggs in Texas (Pl.'s Complaint, ¶ 13), and that defendants put plaintiff in contact with Scruggs to arrange an interview to which plaintiff traveled in Texas to attend (Pl.'s Complaint, ¶ 15). Drawing all inferences in favor of plaintiff, the court finds that he may be able to establish that defendants "operated" a personnel employment agency within the state of Texas, thereby qualifying defendants for coverage under sections 7(a) and (c) of the Texas Act. Accordingly, defendants' motion to dismiss plaintiff's allegations raised in Count II at ¶ 34 subparagraphs (1) and (2) is denied.

### B. Section 3(a)(1)

Plaintiff alleges defendants violated the TPESA by imposing a fee for the registration of an applicant for employment or other fee in violation of Sec. 3(a)(1) of the Act. (Pl.'s Complaint, ¶ 34(3)). Defendants argue plaintiff's allegations under section 3(a)(1) of the Texas Act fail to state a claim because plaintiff makes no allegation that either defendant imposed any fee upon him, and because by the terms of the agreement plaintiff references in his complaint, any fee would have been paid to Scruggs, not to either of the defendants.

Section 3(a)(1) provides that any person acting as a personnel service may not "notwithstanding any refund policy, impose any fee on an applicant for employment until the applicant has accepted an offer of employment resulting from an employment referral made by the personnel service." Tex. Lab.Code Ann. § 5221a–7 Sec. 3(a)(1). Under the statute's definitions, fee is defined as "anything of value." *Id.* at Sec. 1(2). A fee includes "money or other valuable consideration or services or the promise of money or other valuable consideration or services received directly or indirectly by a personnel service from a person seeking employment in payment for a service." *Id.*

Here, plaintiff alleges he was unlawfully charged two different fees that he

believes to be covered by the Act. First, plaintiff alleges Scruggs attempted to persuade him to sign an agreement wherein he would agree to pay the recruiting fee Scruggs had paid to defendants for recruiting him if he left his employment with Scruggs within three years of the date of hire. (Pl.'s Complaint, ¶ 18). He does not allege defendants charged him this fee or that defendants would indirectly receive a fee, or any portion thereof, that plaintiff might have paid to Scruggs under the agreement, had he signed it. Additionally, even if plaintiff had alleged the defendants indirectly charged him a fee, this fee was to be assessed only "after" plaintiff accepted employment with Scruggs. Plaintiff specifically alleges he declined to sign the employment agreement offered to him by Scruggs. (Pl.'s Complaint, ¶ 21). Therefore, this "fee" would not be covered under Sec. 3(a)(1) of the Act because plaintiff does not allege defendants would have received either directly or indirectly any money he might have paid to Scruggs and because no assessment would be charged to him until after he accepted employment with Scruggs.

 Second, plaintiff alleges, within the text of his opposition motion, that he alleged defendants wrongfully assessed a fee to him in violation of Sec. 3(a)(1) by representing that they would reimburse any travel expenses he incurred while traveling to Texas to interview with Scruggs. Plaintiff alleges he incurred $617.71 in car rental and hotel bills (Pl.'s Opposition, p. 37). No Texas court has addressed specifically whether the payment of travel expenses associated with a job interview by a person seeking employment would constitute a "fee" under the Act, where the personnel service promises reimbursement. Examining the plain language of the statute, however, leads this Court to conclude that plaintiff may be able to establish that such expenditure by a person seeking employment is a "fee" under Sec. 3(a)(1) of the Act.

Accordingly, defendants' motion to dismiss plaintiff's allegations raised in Count II at ¶ 34 subparagraphs (3) is denied. In seeking to prove this claim, the plaintiff is limited to asserting that the fee imposed upon him is the promise of reimbursement of travel expenses.

## C. Section 3(a)(2)

Plaintiff alleges defendants violated the TPESA by engaging or attempting to engage in splitting or sharing with an employer, an agent or other employee of an employer, or other person to whom the personnel service has furnished services a payment received by a personnel service from a person seeking employment or from an employer in violation of Sec. 3(a)(2) of the Act. (Pl.'s Complaint, ¶ 34(4)). Defendants argue plaintiff's allegations under section 3(a)(2) of the Texas Act fail to state a claim because plaintiff makes no allegation that either defendant ever received a fee from either plaintiff or Scruggs, the potential employer.

Sec. 3(a)(2) provides that any person acting as a personnel service may not "engage or attempt to engage in splitting or sharing with an employer, an agent or other employee of an employer, or other person to whom the personnel service has furnished services a *payment* received by a personnel service from a person seeking employment or from an employer." Tex. Lab.Code Ann. § 5221a–7 Sec. 3(a)(2) (emphasis added).

 As noted above, plaintiff has made sufficient allegations allowing him to attempt to establish that defendants charged him a fee, in the form of a promise to reimburse travel expenses, under the Act. Additionally, plaintiff alleges that Scruggs attempted to persuade him to sign an agreement wherein he would agree to pay the recruiting fee Scruggs had paid to defendants for recruiting him if he left his employment with Scruggs within three years of the date of hire. (Pl.'s Complaint, ¶ 18). Plaintiff does not specifically allege that he paid these moneys to Scruggs or that if he did, Scruggs would split or share it with defendants. However, drawing, as

we must, all inferences in favor of the plaintiff, the court finds plaintiff has plead sufficiently to allow him to attempt to establish that defendants engaged or attempted to engage in splitting or sharing a *payment* received under the Act in violation of Sec. 3(a)(2).

Accordingly, defendants' motion to dismiss plaintiff's allegations raised in Count II at ¶ 34 subparagraph (4) is denied.

### D. Sections 3(a)(4) and 3(a)(5)

Plaintiff alleges defendants violated the TPESA by referring any applicant for employment except on a valid job order for the referral and by advertising a position without first having a valid job order verifiable by the employer in violation of sections 3(a)(4) and 3(a)(5) of the Act. (Pl.'s Complaint, ¶ 34(5) & (6)). Defendants argue plaintiff's allegations under sections 3(a)(4) and 3(a)(5) of the Texas Act[5] fail to state a claim because plaintiff makes no allegation that defendants failed to receive a valid job order.

Sections 3(a)(4) and (5) provide that any person acting as a personnel service may not "refer any applicant for employment except on a valid job order for the referral," or "advertise a position without there first being a valid job order verifiable by the employer." Tex. Lab.Code Ann. § 5221a–7 Sec. 3(a)(4) & (5). A job order "means a verbal or written notification from an employer of a job opening." *Id.* at Sec. 1(9).

■ Here; plaintiff provides no specific factual basis for his allegation that defendants did not have a valid job order as defined by the Act in his complaint. Plaintiff asserts within his opposition motion that his allegation that defendants knew Scruggs would impose a condition requiring plaintiff to reimburse it for any employment agency fee it paid is sufficient to state a claim under Sections 3(a)(4) and (5) that defendants did not have a valid job

order. Plaintiff's assertion addresses the potential implications of choosing to accept a job with Scruggs. It does not expressly assert that a valid job order, as defined by the statute, did not exist. However, plaintiff has generally asserted that no valid job order existed in paragraph 34 of his complaint. Drawing all inferences in favor of plaintiff, the court cannot say plaintiff can establish no set of facts in support of his claims. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Accordingly, plaintiff's allegations are sufficient to give rise to a cause of action under Sections 3(a)(4) and (5) of the Act.

Accordingly, defendants' motion to dismiss plaintiff's allegations raised in Count II at ¶ 34 subparagraphs (6) and (7) is denied.

### E. Section 3(a)(12)

Plaintiff alleges defendants violated the TPESA by charging a fee of more than 20% of the applicant's gross wages if the position the applicant accepted as a result of a referral by a personnel service lasts less than thirty calendar days and if the applicant leaves the position with good cause in violation of section 3(a)(12) of the Act. (Pl.'s Complaint, ¶ 34(10)). Defendants argue plaintiff's allegations under section 3(a)(12) of the Texas Act[6] fail to state a claim because plaintiff makes no allegation that either defendant charged him a fee or that plaintiff accepted any offer made to him.

Section 3(a)(12) provides that any person acting as a personnel service may not "charge a fee to an applicant of more than 20 percent of the applicant's gross wages if the position that the applicant accepted as a result of a referral by a personnel service lasts less than 30 calendar days and if the applicant leaves the position with good cause." Tex. Lab.Code Ann. § 5221a–7 Sec. 3(a)(12).

---

**5.** In their motion, defendants have incorrectly referred to the relevant portions of the Texas Act. Sections 3(a)(4) and (5), rather than 7(a)(4) and (5) are relevant here.

**6.** In their motion, defendants have incorrectly referred to the relevant portion of the Texas Act. Section 3(a)(12), rather than 7(a)(12) is relevant here.

Here, plaintiff does not allege that he accepted any offer of employment made to him by Scruggs as a result of the referral from defendants. In fact, plaintiff alleges that he declined to sign the contract presented to him. (Pl.'s Complaint, ¶ 21). By its plain language, section 3(a)(12) does not apply to the plaintiff, as he did not "accept" a position as a result of the referral by defendants to Scruggs.

Accordingly, defendants' motion to dismiss plaintiff's allegations raised in Count II at ¶ 34 subparagraph (10) is granted.

After reviewing the relevant statute, case law, and arguments presented by the parties, defendants' motion to dismiss portions of plaintiff's allegations raised under the TPESA in Count II of his complaint is granted in part and denied in part. Plaintiff's allegations contained in ¶ 34 subparagraph (10) are hereby dismissed for failure to state a claim. The allegations raised by plaintiff in ¶ 34 subparagraphs (1), (2), (3), (4), (5), (6), (7), (8) and (9) under the Texas act remain viable following this Court Order.

## V. Motion to Dismiss Plaintiff's Fiduciary Duty Claim (Count III)

Plaintiff claims that a fiduciary relationship existed between the plaintiff and both defendants such that the defendants had a duty to act in good faith and with due regard to the interests of the plaintiff. Plaintiff maintains that defendants owed him this duty because they entered into a position of trust with him, whereby the defendants agreed to market plaintiff to certain employers. Plaintiff claims defendants breached this duty in several respects by: 1) failing to make full disclosures to plaintiff of all facts material to potential employment opportunities; 2) failing to avoid any conflicts of interest; 3) failing to avoid the appearance of impropriety; 4) engaging in active misrepresentation in connection with placement of plaintiff; and 5) imposing upon plaintiff a fee for placing him with an employer. (Pl.'s Complaint, ¶¶ 41, 42).

A "fiduciary relationship" is any relationship of blood, business, friendship, or association in which one of the parties reposes special trust and confidence in the other who is in a position to have and exercise influence over the first party. *Brown v. Foulks,* 232 Kan. 424, 430–31, 657 P.2d 501, 506 (1983). In general, Kansas law recognizes two types of fiduciary relationships: (1) those specifically created by contract, such as principal/agent, attorney/client, and trustee cestui que trust, and those created by formal legal proceedings, such as guardian and/or conservator/ward, and executor/administrator of an estate; and (2) those implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions. *Rajala v. Allied Corp.,* 919 F.2d 610, 614 (10th Cir.1990) (citing *Denison State Bank v. Madeira,* 230 Kan. 684, 691, 640 P.2d 1235, 1241 (1982)). Plaintiff appears to assert that a fiduciary relationship was created under both categories.

Defendants argue that plaintiff fails to allege (and that he cannot truthfully allege) that a fiduciary duty was created by contract or legal proceeding. Accordingly, defendants assert the only way a fiduciary duty could arise is by virtue of a special relationship between the parties. Defendants maintain that a special relationship does not exist because the relationship between the parties was purely commercial in nature, and a fiduciary duty does not attach to purely commercial or business transactions.

Plaintiff responds by arguing that whether a fiduciary relationship exists is a question of fact, *In the Matter of Estate of Bennett,* 19 Kan.App.2d 154, 166, 865 P.2d 1062, 1070 (1993); therefore, the court should simply allow his claim to stand for determination by the fact finder.

Whether a fiduciary relationship exists depends on the facts and circumstances of each individual case. *Denison,* 230 Kan. at 690–91, 640 P.2d at 1241.

The Kansas courts have "refused, for that reason, to give an exact definition to fiduciary relations.... a fiduciary relationship does not exist upon some technical relation created by, or defined in law. It may exist under a variety of circumstances and does exist in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence." *Brown*, 232 Kan: at 430, 657 P.2d at 506 (citations omitted). "The hallmark of a fiduciary relationship is a voluntary and conscious assumption or acceptance of the duties of a fiduciary." *PulseCard Inc. v. Discover Card Services, Inc.*, 917 F.Supp. 1488, 1494 (D.Kan.1996) (citing *Denison*, 230 Kan. at 696, 640 P.2d at 1243–44 ("one may not abandon all caution and responsibility for his own protection and unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary.")). Fiduciary relationships cannot be established inadvertently and cannot be forced upon another party. *Rajala*, 919 F.2d at 614–15; *Flight Concepts Ltd. Partnership v. Boeing Co.*, 38 F.3d 1152, 1158 (10th Cir.1994).

■ Here, the Court finds plaintiff has adequately stated a claim for breach of fiduciary duty. Plaintiff asserts defendants agreed to market plaintiff to certain employers. He alleges facts showing defendants did act on his behalf by putting plaintiff in contact with a potential Texas employer. (Pl.'s Complaint, ¶ 15). Although plaintiff does not allege facts showing a voluntary assumption of such duty by defendants, construing the facts that are pled in favor of the plaintiff and drawing all reasonable inferences in his favor as required under Fed.R.Civ.P. 8(a), the court concludes that it does not appear beyond a doubt that the plaintiff cannot prove some set of facts in support of his theory of recovery that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Accordingly, defendants' motion to dismiss Count III of plaintiff's complaint is denied.

## VI. Motion to Dismiss Plaintiff's Breach of the Covenant of Good Faith and Fair Dealing Claim (Count IV)

Plaintiff alleges defendants owed him a duty of good faith and fair dealing in the provision of employment placement services. Plaintiff further alleges defendants breached this duty by their actions.

■ Kansas law implies a duty of good faith and fair dealing in every contract. *Saint Catherine Hosp. of Garden City v. Rodriguez*, 25 Kan.App.2d 763, 971 P.2d 754, 756 (1998) (citing *Kansas Baptist Convention v. Mesa Operating Ltd. Partnership*, 253 Kan. 717, 726, 864 P.2d 204 (1993)). "[I]f one exacts a promise from another to perform an act, the law implies a counterpromise against arbitrary or unreasonable conduct on the part of the promisee.... Employment-at-will contracts are the only exception to the good faith obligation currently recognized in Kansas." *Hartford v. Tanner*, 22 Kan. App.2d 64, 71, 910 P.2d 872, 877 (1996) (citations omitted).

Defendants argue plaintiff does not adequately allege the existence of a contract between himself and the defendants; therefore, he cannot adequately allege a claim for breach of the covenant of good faith and fair dealing. Plaintiff responds by alleging that he has in fact adequately alleged a contract, and asserts that he was the third party beneficiary of a contract between defendants and Scruggs, a potential Texas employer.

■ Here, the court need not address plaintiff's lengthy argument regarding third party contract beneficiaries, as the court finds plaintiff has adequately alleged the existence of a contract. Plaintiff alleges defendants contacted him offering to represent him in his efforts to secure employment. (Pl.'s Complaint, ¶ 6). Plaintiff

further alleges that defendants put him in contact with an employer in Texas and that he traveled to Texas to interview for employment with this employer. (Pl.'s Complaint, ¶ 15). Considering these facts and drawing all reasonable inferences in favor of the plaintiff, as required under Fed.R.Civ.P. 8(a), the court concludes that it does not appear beyond a doubt that the plaintiff cannot prove some set of facts in support of his theory of recovery that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Accordingly, defendants' motion to dismiss Count IV of plaintiff's complaint is denied.

### VII. Motion to Dismiss Plaintiff's Intentional and/or Negligent Exposure to Litigation by a Third Party Claim (Count VI)

 Plaintiff claims defendants knowingly, intentionally, recklessly, or negligently took action exposing plaintiff to litigation with a third party. Kansas law provides that "[i]n order for an individual to be liable for a negligent or wrongful act, there must be a duty to act." *Fudge v. City of Kansas City,* 239 Kan. 369, 372, 720 P.2d 1093, 1098 (1986), *overruled on other grounds, as noted in Jarboe v. Board of County Comm'rs,* 262 Kan. 615, 938 P.2d 1293 (1997).

Defendants here argue plaintiff fails to state a claim because he has not alleged that defendants owed plaintiff any duty to protect plaintiff from litigation by a third party. Defendants argue plaintiff's allegations do not establish any special relationship that would give rise to this duty. Further, defendants maintain that even if the duty existed, plaintiff has not alleged facts to show a causal relation between the duty and any lawsuit in which plaintiff was involved.

 Here, plaintiff alleges that he was involved in two separate instances of litigation with Scruggs, the Texas employer to whom defendants referred plaintiff for employment. Plaintiff filed a complaint against Scruggs in Texas to recover the value of the labor he allegedly performed during his interview with Scruggs. (Pl.'s Complaint, ¶ 21). Additionally, Scruggs filed a lawsuit against plaintiff based upon an alleged breach of the secrecy agreement he signed prior to his interview. (Pl.'s Complaint, ¶ 22). Plaintiff alleges defendants were aware of Scruggs' efforts to "induce [interviewees] to perform labor without compensation" and of Scruggs' requirement that interviewees sign a secrecy and non-disclosure agreement. (Pl.'s Complaint, ¶¶ 12–13). Plaintiff does not allege, however, that defendants had a duty, arising from the relationship existing between plaintiff and defendants with relation to the employment referral to Scruggs, to protect plaintiff from litigation by Scruggs. Without a such a duty, defendants had no obligation to protect plaintiff from litigation by a third party. Nor does plaintiff allege that defendants' failure to perform such duty was the cause of the litigation with Scruggs (i.e., that defendants' failure to perform their duty caused him to file a complaint against Scruggs and caused Scruggs to file suit against the plaintiff).

Because plaintiff has failed to adequately allege such duty, the court does not reach plaintiff's arguments that negligent exposure to litigation is a viable claim under Kansas law. Accordingly, defendants' motion to dismiss Count VI of plaintiff's complaint is granted.

### VIII. Motion to Strike

Plaintiff prays for punitive damages under his state law claims raised in Counts I, III, IV, VII and VIII. Defendants argue that all reference to punitive damages should be stricken as premature under § 60–3703 of the Kansas statutes.

 Section 60–3703 of the Kansas statutes provides "[n]o tort claim or reference to a tort claim for punitive damages shall be included in a petition or other pleading unless the court enters an order allowing an amended pleading that in-

cludes a claim for punitive damages to be filed." Kan. Stat. Ann. § 60–3703. This state procedural rule does not apply, however, in a diversity action. *Comeau v. Rupp,* 762 F.Supp. 1434, 1449 (D.Kan. 1991); *NAL II, Ltd. v. Tonkin,* 705 F.Supp. 522, 526–27 (D.Kan.1989).

Here, the court retains jurisdiction over plaintiff's state law claims by virtue of diversity jurisdiction. 28 U.S.C. § 1332. Plaintiff has adequately pled facts supporting diversity in his complaint. (Pl.'s Complaint, ¶¶ 1, 2, 3 and individual prayers for relief for each state law claim). Because the court has dismissed plaintiff's only federal claims (contained in Count IX), it does not assert supplemental jurisdiction over plaintiff's state law claims. 28 U.S.C. § 1367.

Therefore, because the court retains diversity jurisdiction with regard to plaintiff's state law claims, the court finds plaintiff has complied with federal procedural rules regarding the pleading of damages. Accordingly, defendants' motion to strike is denied.

### IX. Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The decision to grant leave to amend a complaint lies within the sound discretion of the trial court. *Viernow v. Euripides Dev. Corp.,* 157 F.3d 785, 799 (10th Cir.1998). The court finds it possible that plaintiff could plead facts that might cure the deficiency in Count VI of the complaint. Therefore, as a discretionary measure, the court grants plaintiff leave to amend Count VI of his complaint to conform with the pleading requirements imposed by rule 8(a) of the Federal Rules of Civil Procedure. If plaintiff does not amend his complaint by **February 9, 2000** the claims raised under Count VI will be dismissed with prejudice.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' motion to dismiss (Doc. 13) is granted in part and denied in part.

**IT IS FURTHER ORDERED BY THE COURT** that defendants' motion to dismiss Counts I, VI and IX is granted.

**IT IS FURTHER ORDERED BY THE COURT** that defendants' motion to dismiss portions of Count II is granted in part and denied in part. Plaintiff's allegations contained in ¶ 34 subparagraph (10) is dismissed for failure to state a claim. The allegations raised by plaintiff in ¶ 34 subparagraphs (1), (2), (3), (4), (5), (6), (7), (8) and (9) under the Texas act remain viable following this Order.

**IT IS FURTHER ORDERED BY THE COURT** that defendants' motion to dismiss Counts III and IV is denied.

**IT IS FURTHER ORDERED BY THE COURT** that defendants' motion to strike reference to punitive damages in plaintiff's state law claims (Counts I, III, IV, VII and VIII) is denied.

**IT IS FURTHER ORDERED BY THE COURT** that plaintiff is granted leave to amend his complaint in accordance with this order on or before **February 9, 2000.** Failure to do so will result in dismissal with prejudice of the amendable claim (Count VI).